**Sandra B. Scher DIAMOND, Appellee,**

v.

**Harold DIAMOND, Appellant.**

Superior Court of Pennsylvania.

Argued June 23, 1998.
Filed Aug. 5, 1998.

---

Wendy Glazer, Philadelphia, for appellant.

Dorothy K. Phillips, Philadelphia, for appellee.

Before POPOVICH, ORIE MELVIN and SCHILLER, JJ.

SCHILLER, Judge:

Appellant, Harold Diamond, appeals from the October 23, 1996, order of the Court of Common Pleas of Philadelphia County holding him in contempt and imposing a fine of $500. In the same order, the court also ordered appellant to pay interim counsel fees. We vacate the citation of contempt. The appeal is dismissed as to the issue of interim counsel fees on the basis that an appeal from such an order is interlocutory.

FACTS:

Harold Diamond ("Husband") and Sandra B. Scher Diamond ("Wife") were married on November 2, 1979. Wife filed a divorce complaint on November 9, 1995, requesting, *inter alia*, spousal support, alimony pendente lite, alimony, equitable distribution, counsel fees and costs. Soon after, Wife served Husband with interrogatories, which Husband eventually answered. Dissatisfied with Husband's answers to these interrogatories, Wife filed a petition seeking leave of court to take discovery.[1] On August 9, 1996, the trial court granted Wife leave to take Husband's deposition, to conduct records depositions, and directed Husband to produce certain financial documentation. Wife thereafter filed a petition for contempt as a result of Husband's failure to provide complete answers to her interrogatories, and a request for counsel fees in order to conduct the discovery she had been awarded pursuant to the August 9, 1996, order. On October 23, 1996, the trial court entered an order adjudicating Husband in contempt of the August 9, 1996, order and fining him $500.[2] In addition, the trial court directed Husband to pay to Wife "interim counsel fees" of $3,000. It is from this order that Husband appeals.

DISCUSSION:

Husband raises several issues on appeal:

1. Whether the order entered by the trial court is final and appealable?

2. Whether the trial court erred in failing to provide to Husband the procedural safeguards to which he was entitled for indirect criminal contempt?

3. Whether the trial court erred in finding Husband in contempt?

4. Whether the trial court erred in awarding counsel fees pursuant to 42 Pa.C.S.A. § 2503?

5. Whether the trial court erred in its imposition of sanctions against Husband?

6. Whether the trial court erred in its award of interim counsel fees to Wife?

■ We must first decide whether we have jurisdiction to hear Husband's appeal. The law is well-settled that an appeal "as of right" will lie only from a final order unless otherwise permitted by statute or rule. *White v. Southeastern Pennsylvania Transportation Authority*, 366 Pa.Super. 16, 530

---

1. We note that at the time Wife filed for leave to take discovery, i.e. July 17, 1996, Pa.R.Civ.P. 1920.22(a) provided that, except for interrogatories, a party to a divorce could not serve discovery requests absent leave of court. That Rule was rescinded effective July 1, 1997, in favor of Pa.R.Civ.P.1930.5 which states that discovery shall be without leave of court in accordance with Pa.R.Civ.P. 4001 et seq. in complex support, alimony, equitable distribution, counsel fee and expense applications. Leave of court is still required for discovery in a custody, simple support, or protection from abuse case. *See* Pa.R.Civ.P. 1930.5(a).

2. By order dated March 18, 1997, the trial court entered a further order clarifying that the $500 fine was "payable to the Prothonotary as a consequence of [Husband] having been found in contempt of the Order of 8/9/96."

A.2d 870 (1987), *alloc. denied*, 520 Pa. 578, 549 A.2d 137 (1988) (citations omitted). A final order is an order which (1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is a final order as to fewer than all claims and all parties but the appeal of the order has been expressly determined by the trial court or other governmental unit as one which will facilitate resolution of the entire case. Pa.R.A.P. 341(b); *G.B. v. M.M.B*, 448 Pa.Super. 133, 670 A.2d 714 (1996)(for an order to be final and ripe for appeal it must resolve all pending issues and constitute a complete disposition of all claims raised by all parties).

Unless an interlocutory order falls within Pa.R.A.P. 311,[3] an appeal therefrom may be taken only with permission. *See* 42 Pa. C.S.A. § 702(b); Pa.R.A.P. 312, 1311. An exception to this general rule, known as the "collateral order doctrine", was first set forth by the United States Supreme Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), and subsequently adopted by the Pennsylvania Supreme Court in *Bell v. Beneficial Consumer Discount Company*, 465 Pa. 225, 348 A.2d 734 (1975). Ultimately it was codified at Pa.R.A.P. 313, which provides that an order is considered final and appealable if it satisfies the following three-pronged test:

(1) it is separable from and collateral to the main cause of action;

(2) the right involved is too important to be denied review; and

(3) the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

Pa.R.A.P. 313(b); *See Cohen*, 337 U.S. at 546, 69 S.Ct. 1221; *Fried v. Fried*, 509 Pa. 89, 94, 501 A.2d 211, 214 (1985).[4] Because prior permission was not sought to bring this appeal, and the present order does not fall within Pa.R.A.P. 311, we must determine whether it satisfies the *Cohen* three-prong test, thereby permitting immediate appellate review under Rule 313.

▆▆▆▆ Generally, an order imposing sanctions for discovery violations is interlocutory and not reviewable until the final disposition of the underlying litigation. *See, e.g., Bruno v. Elitzky*, 515 Pa. 47, 526 A.2d 781 (1987)(order striking defendants' defenses as a result of their failure to answer interrogatories was interlocutory and non-appealable); *West v. Andersen*, 426 Pa.Super. 127, 626 A.2d 606 (1993)(order imposing counsel fees as a sanction for party's refusal to be deposed was interlocutory and non-appealable). This is true even where the party refusing to provide discovery is held in *civil* contempt in an effort to coerce compliance with a discovery order. *See, e.g., Fox v. Gabler*, 377 Pa.Super. 341, 547 A.2d 399 (1988)(order holding defendant in civil contempt for violating the court's previous order which required, *inter alia*, that defendant provide discovery, and directing defendant to post a bond of $10,000 or face incarceration, was interlocutory and not appealable). However, we have not previously addressed the issue of appealability

---

**3.** Pa.R.A.P. 311 describes specific interlocutory orders which are appealable as of right.

**4.** There are a few other exceptions specific to domestic relations cases which are not applicable here. These exceptions include the entry of an order which effectively precludes a litigant from presenting the merits of his or her claim, *e.g., Curran v. Curran*, 446 Pa.Super. 633, 667 A.2d 1155 (1995) (decree of divorce entered after bifurcation order severing economic issues from action for divorce is immediately appealable), and orders affecting the parties' minor children which, for policy reasons, are granted immediate appellate review. *See, e.g., G.B. v. M.M.B.*, 448 Pa.Super. 133, 670 A.2d 714 (1996) (a custody order entered within the context of the divorce action will be considered final and appealable if it is entered after the court has completed its

hearing on the merits and it is intended by the court to constitute a complete resolution of the parties' pending custody claims); *Dubin v. Dubin*, 372 Pa.Super. 84, 538 A.2d 1362 (1988) (child support order entered in connection with divorce is immediately appealable to protect the interests of the child); *Freedman v. McCandless*, 539 Pa. 584, 654 A.2d 529 (1995) (order in paternity proceeding requiring blood test of a putative father is immediately appealable in all cases for child support where blood tests are ordered and the alleged father seeks to appeal blood test order based on claim of estoppel). *See also Griffin v. Griffin*, 384 Pa.Super. 210, 558 A.2d 86 (1989) (order enforcing child support through attachment proceedings is immediately appealable).

where, as here, a *criminal* contempt order is entered as a result of an asserted violation of a discovery order. For the reasons which follow, we expressly hold that such an order is appealable under Pa.R.A.P. 313.

A review of the law distinguishing criminal and civil contempt is instructive on this point. The Pennsylvania Supreme Court characterized the differences between these two concepts as follows: ·

There is nothing inherent in a contemptuous act or refusal to act which classifies that act as 'criminal' or 'civil'. The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. For example, it is clear that a contemptuous refusal to testify before a grand jury may be dealt with either a[s] criminal contempt, civil contempt, or both.

These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication is civil. If, however, the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal.

Dominant purpose of coercion or punishment is expressed in the sanction imposed. *A civil adjudication of contempt coerces with a conditional or indeterminate sentence of which the contemnor may relieve himself by obeying the court's order, while a criminal adjudication of contempt punishes with a certain time of imprisonment or a fine which the contemnor is powerless to escape by compliance.*

The civil-criminal classification of contempt exists solely for determination of a contemnor's procedural rights and a court's sentencing options. Quite simply, a contemnor who will be sentenced to a determinate term of imprisonment or a fixed fine, which he is powerless to escape by purging himself of the contempt, is entitled to the essential procedural safeguards that attend criminal proceedings generally. Second, a court is not permitted to impose a coercive sentence conditioned on the contemnor's performance of some act that is incapable of performance.

*In re Martorano,* 464 Pa. 66, 77–80, 346 A.2d 22, 27–29 (1975)(emphasis added)(footnotes, citations omitted). Stated simply, in a civil contempt order the contemnor is able to purge himself of the contempt and thus holds the keys to the jailhouse door. *See, e.g., Colbert v. Gunning,* 368 Pa.Super. 28, 29–31, 533 A.2d 471, 472 (1987); *Markey v. Marino,* 361 Pa.Super. 92, 96–98, 521 A.2d 942, 945 (1987), *alloc. denied,* 516 Pa. 614, 531 A.2d 781 (1987); *Knaus v. Knaus,* 387 Pa. 370, 379, 127 A.2d 669, 673 (1956).

In this case, the fine imposed was both unconditional and payable to the court. Thus the punishment was both "certain" and beyond appellant's power to escape. These facts clearly render that part of the judge's order criminal instead of civil. *Vito v. Vito,* 380 Pa.Super. 258, 259–62, 551 A.2d 573, 574 (1988), *citing with approval Hicks v. Feiock,* 485 U.S. 624, 631–632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988)("If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order"). *See also Crozer–Chester Medical Center v. Moran,* 522 Pa. 124, 134, 560 A.2d 133, 138 (1989)(fine imposed for past violations was criminal and not civil in nature).[5]

This conclusion does not, however, end our inquiry; for we must now examine whether an immediate appeal from the imposition of indirect criminal sanctions falls within Pa.R.A.P. 313. We have no hesitation in concluding that it does. First, the imposition of a criminal sanction is clearly collateral to the underlying proceeding in which it occurs because, by its nature, it is directed to an

---

**5.** This conclusion is buttressed by the trial court's opinion in which the court states that its order was intended to "punish" Husband as a sanction for failure to comply with the court's discovery order. *Slip Opinion, October 1, 1997, Diamond v. Diamond,* Court of Common Pleas of Philadelphia County, November Term 1995, No. 008463.

individual's independent conduct and not to the ultimate issues which are at stake in the underlying action. Second, a determination of criminal contempt is a criminal conviction,[6] conferring on the contemnor all the negative characteristics of being a convicted criminal. The right of a citizen to be free of the stigma of an unfair or an unfounded criminal conviction is a hallmark of American jurisprudence; thus the right to be free from the taint of such a conviction is too important to be denied immediate review. *See U.S. Const. amend. V*; *Pa. Const. Art. 1, § 8*. *See also Ingebrethsen v. Ingebrethsen*, 443 Pa.Super. 256, 661 A.2d 403 (1995).[7] Third, although we can agree in theory with appellee that appellant's right to appeal the contempt citation would not be irreparably lost if we ruled this appeal interlocutory, that argument focuses too narrowly on the right of appeal, as opposed to the right of each citizen to be free of the stigma of an unfounded criminal conviction. In this latter instance each day that an unfounded criminal conviction hangs over one's head is irreparably lost, and there is a compelling interest for all in having a challenge to that conviction examined immediately.[8]

■■■ We therefore conclude that indirect criminal contempt orders entered prior to the conclusion of the underlying case satisfy all three prongs of the *Cohen* test, and, consequently, are entitled to immediate appellate review. We caution that our holding today is to be narrowly construed, and is not intended to give litigants an avenue to avoid the general rule that orders which are entered prior to the conclusion of a divorce action are deemed to be interlocutory and non-appealable. *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985).[9] At the same time we do not wish to impinge on the power of trial judges to control litigation, and this opinion should not be construed as limiting a trial judge's ability to use criminal contempt as a sanction. Moreover, we are cognizant of the fact that, as in this case, an interlocutory appeal can force the underlying case to an

6. "Criminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both. ... Criminally contemptuous conduct may violate other provisions of the criminal law; but even when this is not the case convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same. Indeed, the role of criminal contempt and that of many ordinary criminal laws seem identical – protection of the institutions of our government and enforcement of their mandates." *Cipolla v. Cipolla*, 264 Pa.Super. 53, 58, 398 A.2d 1053, 1055 (1979), citing *Bloom v. Illinios*, 391 U.S. 194, 201, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).

7. In *Ingebrethsen v. Ingebrethsen*, 443 Pa.Super. 256, 661 A.2d 403 (1995), the Superior Court, per Judge Hoffman, refused to dismiss as moot an appeal from an indirect criminal contempt order, even though the alleged contemnor had already served the ninety day sentence, because of the trial court's egregious denial of procedural due process.

8. Although it is not crucial to our determination in this case, we note that Husband's conviction for criminal contempt could have consequences beyond those imposed by the trial court. Husband, who is an attorney, is bound by the Rules of Professional Conduct, in which Rule 8.4 states that it is "professional misconduct for a lawyer to ... (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; [or] ... (d) engage in conduct which is prejudicial to the administration of justice.." Further, the preamble to the Rules states, "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. While it is a lawyer's duty, when necessary, to challenge the rectitude of official action, it is also a lawyer's duty to uphold legal process." A conviction for indirect criminal contempt could result in separate disciplinary proceedings for a violation of the Rules of Professional Conduct, thus providing additional justification for our decision to grant immediate appellate review of this indirect criminal contempt conviction.

9. *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985) (interim orders awarding economic relief are interlocutory pending the resolution of the divorce). *Accord, e.g., Caplan v. Caplan*, 713 A.2d 674 (Pa.Super.1998) (order determining validity of a marriage is interlocutory unless it ends the litigation); *Calibeo v. Calibeo*, 443 Pa.Super. 694, 663 A.2d 184 (1995) (neither spousal support nor alimony pendente lite orders are appealable until all economic claims are resolved); *O'Brien v. O'Brien*, 359 Pa.Super. 594, 519 A.2d 511 (1987) (order requiring accounting and preventing dissipation of marital funds during pendency of divorce was interlocutory and non-appealable); *Shazes v. Baltuskonis*, 359 Pa.Super. 599, 519 A.2d 514 (1987) (order awarding husband interim exclusive possession of the marital home was interlocutory and non-appealable).

abrupt and protracted halt and trap the litigants in the nightmare of their domestic relations purgatory. Thus, in order to avoid such a delay in the disposition of the underlying case, we recommend that, when considering the use of criminal contempt, a trial judge assign a separate case number to the criminal matter so that this matter can proceed of its own accord. Then the underlying action will not be affected by the taking of an appeal from any order entered in that separate action.

 We next examine whether the trial judge here erred in entering the contempt order.[10] Our examination must focus on the sufficiency of the evidence in support of the judge's citation of contempt. This evidence must demonstrate beyond a reasonable doubt that Husband's conduct was sufficient to sustain the citation of contempt. *Vito, supra*, 380 Pa.Super. at 266–67, 551 A.2d at 577 (citations omitted). Four elements must be present to support a finding of criminal contempt for failure to comply with a court order: (1) the order must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited; (2) the contemnor must have had notice of the specific order or decree, (3) the act constituting the violation must have been volitional, and (4) the contemnor must have acted with wrongful intent. *See, e.g., Fenstamaker v. Fenstamaker*, 337 Pa.Super. 410, 415–17, 487 A.2d 11, 14 (1985) (citations omitted). Moreover, proof of non-compliance alone is insufficient to support the conviction. Instead, it must be proven, *inter alia*, that the alleged contemnor's failure to comply with the order was willful or at least reckless. *Smith v. Mason*, 328 Pa.Super. 314, 317–19, 476 A.2d 1347, 1349 (1984) (citations omitted). With these standards in mind, we review the evidence presented in this case.

 The trial court held Husband in contempt for his failure "to make a good faith effort to comply" with the court's prior order of August 9, 1996. Husband argues that there was insufficient evidence presented at the October 23, 1996 hearing upon which to base this finding. We agree.

The August 9, 1996 order provided as follows:

> AND NOW, this 9th day of August, 1996, upon consideration of the within pleading, and after hearing thereon, it is hereby Ordered and Decreed that Petitioner/Wife, Sandra B. Scher Diamond is granted leave to:
>
> (a) Take the deposition of Husband within (30) thirty days of the date of this Order;
>
> * * * *
>
> (d) Respondent is Ordered to produce his 1995 and 1996 statements of receipts and disbursements, including his 1995 1040 and any other Federal or State filings for 1995 and 1996 to date within fourteen (14) days of the date of this Order;

---

10. Husband has argued that he was not afforded the essential procedural safeguards which are attendant to a criminal contempt proceeding. These procedural safeguards include: the right to bail, the right to be notified of accusations against him or her, a reasonable time to prepare a defense, the assistance of counsel, and the right, upon demand, to a speedy and public trial before a jury. *See* 42 Pa.C.S.A. § 4136; *Ingebrethsen, supra*, 443 Pa.Super. at 260–62, 661 A.2d at 405. Moreover, guilt must be proven beyond a reasonable doubt. *Vito v. Vito*, 380 Pa.Super. 258, 266–67, 551 A.2d 573, 577 (1988) (citations omitted). The trial court below failed to hold a hearing, but rather permitted counsel for each party to argue his or her position, and accepted into evidence several exhibits by agreement. Clearly, a colloquy of counsel was not sufficient to satisfy the strict procedural due process requirements to which Husband was entitled prior to a conviction for indirect criminal contempt. However, the record of the October 23, 1996, hearing is devoid of any objection by Husband's counsel to the nature of the proceeding, including the failure of the court to hold an evidentiary hearing. Thus, we must conclude that Husband waived his right on appeal to challenge the indirect criminal contempt conviction for lack of procedural due process. *Accord Smith v. Smith*, 431 Pa.Super. 588, 637 A.2d 622 (1993), *alloc. denied*, 539 Pa. 680, 652 A.2d 1325 (1994) (conviction of civil contempt based on colloquy of parties violated appellant's procedural due process rights; however, appellant's failure to object to these proceedings resulted in a waiver of his due process argument). *See also, Travitzky v. Travitzky*, 369 Pa.Super. 65, 534 A.2d 1081, 1085 (1987); *Fenstamaker v. Fenstamaker*, 337 Pa.Super. 410, 417–19, 487 A.2d 11, 15 (1985).

(e) Respondent and/or his agents are Ordered to provide the Distribution Schedule from Respondent's mother's inheritance, as well as annual statements from investments thereof from 1980 to the present. Respondent is granted leave to Subpoena said documents from the financial institutions that provided said services with regard to investing and/or controlling Respondent's mother's inheritance from 1980 to the present;

(f) Petitioner' shall have the right to conduct a Records Deposition for the banks, financial institutions, accountant and investment providers to produce all documents necessary to show the marital estate and its present status;

\* \* \* \*

(h) Husband is Ordered to provide any and all retirement documents, including but not limited to, Statements for IRA's, Keoghs, SEP–IRA's, and Pension and/or Profit Sharing Plans from 1990 to the present within fifteen (15) days from the date of this Order.[11]

*Order, August 9, 1996, Diamond v. Diamond,* Court of Common Pleas of Philadelphia County, November Term 1995, No. 008463.

With regard to subparagraphs (a) and (f), Wife was given leave to take Husband's deposition and to conduct records depositions "for the banks, financial institutions, accountant and investment providers to produce all documents necessary to show the marital estate and its present status." At the contempt hearing, Husband's attorney indicated that Husband had made himself available for a deposition by Wife's attorney within the thirty day period, but that Wife's attorney had failed to schedule the deposition. Wife acknowledged this, but said that she lacked the financial resources with which to proceed. N.T. 10/23/96, pp. 20–21. It is significant that Husband's payment of Wife's counsel fees and expenses was **not** required by the August 9, 1996, order; therefore, Wife's inability to proceed with discovery did not result from any violation of an affirmative obligation imposed by the court. Similarly, with regard to the records depositions of financial institutions, it was Wife's affirmative duty under the August 9, 1996, order to schedule these depositions, and there was no evidence that Husband interfered with or prevented this scheduling in any way. To the contrary, instead of scheduling these depositions, Wife elected to file a separate request for counsel fees in order to pursue them. While this claim was certainly a proper subject of a petition for interim expenses,[12] Wife's asserted impecuniosity was not a basis for holding Husband in contempt.

Subparagraphs (d), (e) and (h) of the August 9, 1996, order did impose on Husband an affirmative obligation to produce certain financial documentation to Wife. With regard to the requirement that Husband provide his 1995 and 1996 "statements of receipts and disbursements", including his 1995 1040 and any other 1995 or 1996 federal or state tax filings, Husband provided a copy of his 1995 tax form, an executed Form 4506 allowing Wife to obtain certain information directly from the IRS,[13] copies of his handwritten expense ledger book from January, 1995 through July, 1996, and copies of certain account statements for 1995 and 1996. Wife's counsel argued that the expense ledger copies were illegible; however, she never advised Husband's counsel that she could not

---

**11.** This order was entered on a form proposed by Wife and attached to her petition. The paragraphs which have been omitted here were crossed out by the court on the original order.

**12.** 23 Pa.C.S.A. § 3702(a) provides as follows: "In proper cases, upon petition, the court may allow a spouse reasonable alimony pendente lite, spousal support and reasonable counsel fees and expenses. Reasonable counsel fees and expenses may be allowed pendente lite ... ".

**13.** Wife requested the Form 4506 because she had received two different versions of Husband's 1995 tax return, one attached to his answers to interrogatories and one transmitted by counsel at a later date. Husband's counsel explained at the August 9, 1996, hearing that the later draft was the document actually filed with the IRS, while the earlier draft had been prepared by Husband's accountant in anticipation of a previously scheduled alimony pendente lite hearing. N.T. 8/9/96, pp.19–21.

read the reports prior to filing the contempt petition. Wife's counsel also complained that she was not given an opportunity to review Husband's original cancelled checks; however, Husband's counsel stated that he had offered to make Husband's checks available for copying at Wife's expense. While we do not condone Husband's failure to provide all of his monthly account statements for the period in question (if they were in fact available to him), we cannot say on the basis of this evidence that he demonstrated the wrongful intent required for a criminal contempt citation.[14] This is particularly true since the order in question, submitted by Wife's counsel, provided no clear guidance as to the type and manner of documents to be produced.

Next, with regard to Husband's inheritance from his mother, Wife sought documentation of the increase in value of this non-marital asset from the date it was received (1980) to the present. Husband's counsel stated that he had provided all of the documentation in Husband's possession, which included copies of the stock certificates and the schedule of distribution from his mother's estate.[15] It is true that Husband did not provide any brokerage statements for the securities; however, the securities were not maintained in a brokerage account, but rather held by Husband in kind. While Wife's counsel argued that these securities were maintained at one time in a Prudential account, she presented no evidence that Husband willfully failed to provide statements for this account. In fact, at the previous hearing, Wife's counsel had requested and was granted leave to conduct records depositions of the financial institutions which provided services for Husband's inheritance because

Husband had no further documentation. N.T. 8/9/96, pp.23–27. Moreover, while the trial court took issue with the fact that Husband had not provided to Wife a list of the values of these securities on the date of the inheritance as compared to the current date, the August 9, 1996, order did not require Husband to produce this information. Thus, we can find no evidence to support a willful failure to comply with this portion of the court's August 9, 1996, order.

With respect to Husband's retirement account statements, the order required that he produce "any and all" statements for the period 1990 to present. Husband produced his account statements for several recent months and authorized Prudential to produce a printout for all of his retirement accounts from 1990 to present. While that printout appears to have been incomplete, again Wife presented no evidence that Husband failed to provide documentation which was in his possession or prevented her in any way from obtaining documentation directly from the financial institutions, as she was authorized to do under the August 9, 1996, order. We therefore find no evidence based on this conduct to support a contempt citation.

For all of the foregoing reasons, we must conclude that the court erred in finding Husband in indirect criminal contempt of its order of August 9, 1996, order. Therefore, that portion of the court's order is reversed, and the fine imposed as a sanction for the contempt is vacated.[16]

▮▮▮▮ Finally, Husband's remaining three claims, i.e., that the trial court erred in awarding counsel fees pursuant to 42 Pa. C.S.A. § 2503, that the trial court erred in its imposition of discovery sanctions against

---

**14.** We also fail to see how the legibility of Husband's expense ledgers is a basis for contempt if in fact these were copies of his original ledgers. Certainly if the ledgers were illegible, Wife would be entitled to additional discovery but, absent an order to transcribe the ledgers (which the trial court directed Husband to do *prospectively* in its October 23, 1996, order), Husband's provision of copies of the original records cannot be deemed contemptuous.

**15.** At the August 9, 1996 hearing, Husband's counsel stated that Husband received an additional $20,000 in cash from his mother's estate in

1980 which was put in a Corestates account and that Husband did not retain any statements for this account other than the most recent statements, indicating that the present value of this account was about $20,000. The August 9, 1996, order gave Wife the ability to conduct records depositions for, *inter alia*, this account and, again, her failure to do so does not connote any contemptuous conduct on Husband's part.

**16.** Husband may have narrowly escaped a minefield. As Montaigne wrote, "God defend me from myself." *Essays III, xiii.*

Husband, and that the trial court erred in its award of interim counsel fees to Wife, all concern matters which are clearly interlocutory and, therefore, not immediately appealable. *Fried, supra.* Consequently, Husband's appeal as to these issues is dismissed without prejudice to his ability to raise them at the conclusion of the underlying litigation.

## CONCLUSION:

That portion of the trial court's October 23, 1996, order holding Husband in contempt and imposing an unconditional fine of $500 payable to the Prothonotary constituted a finding of indirect criminal contempt, which satisfies the requirements of Pa.R.A.P. 313, and is therefore immediately appealable. However, the evidence was insufficient to sustain a finding of indirect criminal contempt and, therefore, the contempt citation is reversed and the fine is vacated. Finally, Husband's claims with respect to the award of interim counsel fees are interlocutory and are dismissed without prejudice.

Accordingly, the citation of contempt is vacated, the motion to quash is dismissed, and the case is remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.