J-S28031-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| S.J.C. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.D.C., | : | |
| | : | |
| Appellant | : | No. 33 MDA 2018 |

Appeal from the Order Entered December 26, 2017
in the Court of Common Pleas of York County
Civil Division at No(s): 2017-FC-2064-03

BEFORE: OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED OCTOBER 12, 2018**

R.D.C. ("Father") appeals from the Order finding him in contempt of a prior court Order directing him to return his minor daughter, M.C. ("Child") (born in June 2011), from North Carolina, where he resides, to Pennsylvania, where S.J.C. ("Mother") resides, and sanctioning Father with 60 days' incarceration and payment of Mother's attorneys' fees in the amount of $1,723.95.[1] We affirm in part and vacate in part, and remand for further proceedings.

On October 25, 2017, Mother filed a Complaint for custody, seeking shared legal custody and primary physical custody of Child in Pennsylvania,

---

[1] We note that "an order of contempt is final and appealable when the order contains a present finding of contempt and imposes sanctions." **In the Interest of C.W.**, 960 A.2d 458, 460 n.1 (Pa. Super. 2008) (citation and brackets omitted); **see also Diamond v. Diamond**, 715 A.2d 1190, 1194-95 (Pa. Super. 1998) (holding that indirect criminal contempt orders entered prior to the conclusion of the underlying case are appealable under the collateral order doctrine set forth in Pa.R.A.P. 313).

with Father to have partial physical custody of Child in North Carolina. On October 27, 2017, Mother filed a Petition for special relief. Therein, she alleged that, in October 2017, Father had taken Child to North Carolina without Mother's knowledge, and had refused to return Child to Mother's care in Pennsylvania. Mother petitioned the trial court to order Father to return Child to Pennsylvania pending the outcome of the parties' custody case. Mother's Petition included a Notice of presentment of the matter on November 6, 2017. On October 31, 2017, Mother filed an Affidavit of Service, stating that on October 28, 2017, a process server had personally served Father in North Carolina with, *inter alia*, Mother's Petition for special relief and the Notice of presentment.

Father did not appear at the hearing on November 6, 2017. At this hearing, the trial court entered an Order (hereinafter the "Return Order") stating, in relevant part, as follows:

> In this matter, we have Mother here, through counsel, for a [P]etition for special relief asking for [] [C]hild to be returned to the jurisdiction. It appears that Father took [] [C]hild to North Carolina and has had [] [C]hild there for approximately one month[,] and has not allowed [] [C]hild to go back to Mother or see Mother in that one-month time period.
>
> There is a conciliation conference scheduled for November 13, 2017 [(hereinafter the "conciliation conference")]. Accordingly, we order that Father shall return [] [C]hild to Mother immediately so that [] [C]hild can be in the jurisdiction, so that Mother can get some make-up time for the month of custody that she has missed, and so [that] [C]hild can go back to school … [,] until the conciliation conference can be held ….
>
> In the event that Father does not bring [] [C]hild back amicably, Mother may go to North Carolina armed with this Court

- 2 -

Order and obtain [] [C]hild[,] to bring [] [C]hild back to York County, Pennsylvania.  …

Trial Court Return Order, 11/6/17, at 1-2.

At the conciliation conference on November 13, 2017, both Father and Mother appeared.[2]  Two days later, Father filed an Emergency Petition for special relief.  Therein, he alleged that (a) he never received the Notice of presentment concerning Mother's Petition for special relief; and (b) he became aware of the Return Order for the first time at the conciliation conference. Father also requested an award of sole legal and physical custody of Child to him, alleging that such an award would be in Child's best interest in light of Mother's alleged mental health issues.  On the same date, Father additionally filed a Motion to vacate the Return Order.

One week thereafter, Mother filed an Answer to Father's Emergency Petition and a Petition for contempt against Father, asking the court to find him in contempt of court and to order Child immediately returned to Mother and enrolled in a York County school district.  Mother also requested that Father be ordered to pay her attorneys' fees of $1,312.50.

On November 27, 2017, the trial court entered an interim Order for custody, pending trial, directing that the parties would share legal custody, and would share physical custody on an alternating week basis.  The court further directed Father to immediately return Child to York County.

---

[2] Father did not bring Child back to Pennsylvania for the conciliation conference.

- 3 -

Also on November 27, 2017, the trial court entered an Order in open court, stating, in relevant part, as follows:

> We want to make it very clear … that we have told the parties and counsel that [the Return] Order, except to the extent it is changed by … [O]rder resulting from the … conciliation conference …, those Orders better be obeyed, because regardless if there are any defects in original service, [] [F]ather has appeared at the conciliation [conference] …, he has appeared here with counsel, and we have warned Father of the dire consequences if [] [C]hild does not, at the very least, go back and forth on the week on/week off schedule[,] as … Mother apparently has not seen [] [C]hild for over two months.
>
> Therefore, Father is warned that if he is found in contempt, particularly in contempt for actions from this date forward, the consequences will be most severe.

Trial Court Order, 12/1/17, at 1-3.

The trial court held a hearing on the parties' competing Petitions on December 20, 2017 (hereinafter the "contempt hearing").[3] At the close of the contempt hearing, the trial court issued an Order (hereinafter the "Contempt Order") stating as follows:

> The [c]ourt has before it Father's Petition to Vacate the [Return] Order …, as well as a Petition for Special Relief and/or Petition for Contempt by Mother[,] asking that [] Father be held in contempt of the [Return] [O]rder[,] as well as the November 2[7], 2017 [interim] [O]rder.
>
> We find Father in contempt. We further find that he was properly served. And we simply do not believe him. We find no credibility in him that he was served with only part of the documents.

---

[3] Father was present and testified at the contempt hearing. Father turned over custody of Child to Mother four days before the hearing.

- 4 -

Therefore, [Father's] Petition to Vacate is denied. Interestingly, it's of no relevance whether the [Return O]rder would be vacated or not, since Father admitted on the stand that he got a copy of it and chose to disobey it[,] and the decision that was announced at [the] conciliation conference …, and was made an [O]rder on November 22, 2017, was done in his presence and he chose to disobey that also because he didn't think Mother's mental health was properly addressed.

We find that Father's believing that his own assessment of the situation trumps [c]ourt Orders to be opprobrious. Therefore, it is the order of this [c]ourt that the [Return O]rder stands. …

Further, Father is found in contempt of [c]ourt for disobeying both the [Return Order,] as well as the conciliation conference decision made … into a Court Order on November 22, 2017.

We also take judicial notice of the fact that on November 9, 2017, [the] York County Prothonotary sent a copy of the [Return] [O]rder to Father by ordinary mail. And that further, Mother's attorney sent [Father] a copy of the [Return] [O]rder[,] and [Father] claims to have not gotten any copies of [it] until after the … conciliation conference.

Therefore, the sanctions for Father's contempt are as follows:

No. 1, by April 30, 2018, he shall pay to Mother or her attorneys the sum of $1,723.95 as an award of attorney's fees.

No. 2, Father shall serve a sentence of 60 days imprisonment in the York County Prison[,] to commence on Wednesday, January 3, 2018 at noon ….

No. 3, while Father is incarcerated, his rights of custody with [respect to Child] will be temporarily suspended, and Mother will enjoy those weeks per the November 22, 2017[] [interim] [O]rder. But[,] when [Father] is released from incarceration, if there has not been a further Order of Court by that time, then he may go back to the week on/week off schedule set forth … [in] that November 22, 2017 Order.

- 5 -

Contempt Order, 12/26/17, at 1-4.

Father timely filed a Notice of appeal from the Contempt Order, and shortly thereafter, a court-ordered Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[4]

In the meantime, on January 19, 2018, Father filed with this Court a Motion for bail pending appeal,[5] challenging the trial court's prior denial of the Motion for bail that he had presented to that court. In response, this Court remanded Father's Motion for bail for the trial court judge to state on the record his reasons for refusing bail.

On January 29, 2018, the trial court filed a "Statement on Bail." Notably to this appeal, the court explained therein that it had denied Father's Motion for bail because it had not found Father in indirect criminal contempt, but, rather, in *civil* contempt, for his failure to follow a custody Order, such that bail did not apply. However, the trial court conceded that it had erred in failing to include a purge condition in the Contempt Order, pursuant to section

_____

[4] *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that the appellant's failure to comply strictly with Rule 1925(a)(2)(i) (requiring a Children's Fast Track appellant to simultaneously file the concise statement with the notice of appeal) did not warrant waiver of his claims, as there was no prejudice to any party).

[5] Therein, Father stated that he was incarcerated at that time, in the York County Prison, pursuant to the Contempt Order.

5323(g)(2) of the Child Custody Act.[6] Accordingly, the trial court requested that this Court remand the matter so that it could correct this error.[7]

On remand, by an Order entered on February 6, 2018, the trial court amended the Contempt Order to include a purge condition (hereinafter "the amended purge condition"), pursuant to subsection 5323(g)(2). Specifically, the court directed that if Father made a payment of $1,723.95 (*i.e.*, the amount of Mother's attorneys' fees initially imposed in the Contempt Order) to Mother or her attorney, he would immediately be released from incarceration.[8]

On appeal, Father presents the following issues for our review:

I. Whether the lower court committed [an] error of law or abuse of discretion in its determination that [Father] was being sentenced for civil contempt instead of criminal contempt[,] when the court sentenced [Father] to 60 days of confinement in the York County Prison without any purge conditions?

---

[6] Section 5323(g), governing contempt for noncompliance with a custody order, requires, in relevant part, that "[a]n order committing an individual to jail under this section *shall* specify the condition which, when fulfilled, will result in the release of that individual." 23 Pa.C.S.A. § 5323(g)(2) (emphasis added); **see also id.** § 5323(g)(1)(i), (v) (providing that "[a] party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following: (i) Imprisonment for a period of not more than six months[;]" and/or "(v) Counsel fees and costs.").

[7] The trial court likewise made the same concession of error, and request for remand on this point, in its Pa.R.A.P. 1925(a) Opinion issued on January 31, 2018.

[8] It is unclear from the record whether Father paid Mother's attorneys' fees in order to be released from incarceration or whether he served the full 60 days in the York County Prison.

II. Whether the lower court used the appropriate standard in adjudicating [Father] in contempt?

III. Whether the evidence was sufficient to support a finding of contempt beyond a reasonable doubt[,] when the lower court did not permit [Father] to submit evidence as to all of the elements of contempt?

IV. Whether the lower court committed [an] error of law or abuse of discretion when it failed to consider the "wrongful intent" element of contempt?

Father's Brief at 5 (capitalization omitted).[9]  As Father's issues are related, we will address them simultaneously.

This Court has explained our standard of review, and the law concerning contempt, as follows:

When a party appeals a court's order holding them in contempt of court, our review is very narrow.  We are limited to determining whether the trial court committed a clear abuse of discretion.  This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt.

The power to punish for contempt, including the power to inflict summary punishment, is a right inherent in the courts and is incidental to the grant of judicial power under the Constitution. The court may order civil or criminal contempt.  The characteristic that distinguishes civil from criminal contempt is the ability of the contemnor to purge himself of contempt by complying with the court's directive.  If he is given an opportunity to purge himself *before imposition of punishment*, the contempt order is civil in

_____

[9] We note that Father's brief does not comply with Pennsylvania Rule of Appellate Procedure 2119, which requires that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part … the particular point treated therein, followed by such discussion and citation to authorities as are deemed pertinent." Pa.R.A.P. 2119(a).  Father's Argument section headings do not correspond to the four issues he sets forth in his Statement of Questions Presented. Nevertheless, we will overlook this defect and address the merits of his claims.

nature. If the purpose of the order is to punish despite an opportunity to purge, the order is criminal in nature. A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs[,] *but not to inflict punishment*.

***Sinaiko v. Sinaiko***, 664 A.2d 1005, 1009 (Pa. Super. 1995) (emphasis added; citations, quotation marks, emphasis, and paragraph breaks omitted);[10] ***see also Gunther v. Bolus***, 853 A.2d 1014, 1018 (Pa. Super. 2004) (stating that "[i]n civil contempt, the contemnor is able to purge himself of the contempt and thus holds the key to the jailhouse door; that is, he may relieve himself of the sanction by complying with the court's order." (citation and quotation marks omitted)).

> The proper classification of a contempt adjudication is important because it governs the procedures that must be followed. If the adjudication is criminal,[11] then the contemnor is entitled to all of the procedural rights and safeguards afforded to criminal defendants, including the right to trial by jury. There is nothing inherent in the violation of a court order that renders the violation itself civil or criminal. Rather, it is the judicial response to the violation that determines whether the contempt is civil or criminal. We must look to the nature of the sanction imposed in order to ascertain the trial court's "dominant purpose." In the most basic terms, if the dominant purpose is to coerce the

---

[10] As the statute implicated in this appeal, section 5323(g), does not state whether it authorizes incarceration for civil or criminal contempt, we must turn to our case law for guidance.

[11] Criminal contempt may be classified as either direct or indirect. "A direct criminal contempt consists of misconduct of a person in the presence of the court, or misbehavior so near thereto as to interfere with the immediate business of the court." ***Fenstamaker v. Fenstamaker***, 487 A.2d 11, 14 (Pa. Super. 1985) (citation omitted). "A charge of indirect criminal contempt consists of a claim that a violation of an order or decree of court occurred outside the presence of the court." ***Commonwealth v. Ashton***, 824 A.2d 1198, 1203 (Pa. Super. 2003) (citation omitted).

contemnor to comply with a court order, it is civil; if the dominant purpose is to punish the contemnor for a past violation, it is criminal.

*Gunther*, 853 A.2d at 1016 (footnote added; internal citations omitted); *see also Diamond*, 715 A.2d at 1195 (stating that "a determination of criminal contempt is a criminal conviction conferring on the contemnor all the negative characteristics of being a convicted criminal. The right of a citizen to be free of the stigma of an unfounded criminal conviction is a hallmark of American jurisprudence.").

Father challenges the trial court's finding him in contempt, and argues that the court (a) incorrectly determined that it had found him in civil, rather than criminal contempt, where the contempt was penal in nature; (b) unlawfully ordered him incarcerated without first giving him an opportunity to purge himself pursuant to 23 Pa.C.S.A. § 5323(g)(2); (c) applied an incorrect, civil standard of proof (instead of a criminal standard of "beyond a reasonable doubt"); and (d) improperly barred him from introducing evidence to prove his innocence and lack of wrongful intent. *See* Father's Brief at 7, 9-13. Father points out that he had returned Child to Pennsylvania four days *before* the contempt hearing. *Id.* at 10. Father contends that, therefore, any incarceration imposed as a sanction was to punish him, via criminal contempt, for his failure to comply with the Return Order, rather than to coerce his compliance with a specified action through the civil contempt process. *Id.* Father additionally argues that the trial court erred in failing to afford him all of the essential procedural safeguards attendant to a proceeding of indirect

- 10 -

criminal contempt. *Id.* Finally, Father urges that mere disobedience of a court order is not enough to support a criminal contempt finding, and that there is a requirement that any disobedience of a court order must be accompanied by "wrongful intent." *Id.* at 8, 12.

We conclude that, contrary to the trial court's classification, the Contempt Order was predominantly criminal, not civil, in nature. Where the trial court immediately sentenced Father to 60 days' incarceration for his failure to comply with the Return Order, with no opportunity to purge prior to the commencement of his confinement,[12] its dominant purpose was to punish Father. *See Gunther*, 853 A.2d at 1016, 1018 (stating, respectively, that (a) "if the dominant purpose [of a contempt order] is to punish the contemnor for a past violation, it is criminal"; (b) "[i]n criminal contempt, the contemnor is punished with a fixed term of imprisonment or fine that he is powerless to escape by compliance"; and (c) "if the adjudication is criminal, then the contemnor is entitled to all of the procedural rights and safeguards afforded

---

[12] The Contempt Order, which undisputedly did not originally contain a purge condition pursuant to 23 Pa.C.S.A. § 5323(g)(2), ordered Father's incarceration for 60 days to begin on January 3, 2018. The trial court did not add the amended purge condition until February 6, 2018.

- 11 -

to criminal defendants"[13] (citation and quotation marks omitted)).

Moreover, though the trial court complied with this Court's directive and added the amended purge condition, *i.e.*, Father's payment of Mother's attorneys' fees, the court imposed such condition to allow for Father's *release* from incarceration. The amended purge condition was therefore not a proper "purge" condition, as it was not an opportunity for Father to purge himself *before* imposition and commencement of incarceration. **See, e.g., Gunther**, 853 A.2d at 1016 (observing that "[i]t is [] common[,] in civil contempt[,] for a court to impose a *conditional* prison sentence, giving the contemnor an opportunity to purge the contempt and *avoid the sentence* by … paying counsel fees[] … within a certain time period." (emphasis added)).

Accordingly, the trial court erred when it imposed upon father a criminal contempt sanction of 60 days' incarceration, where the court had failed to (1) impose a purge condition under subsection 5323(g)(2) until after Father's incarceration had commenced; and (2) afford Father any of the procedural safeguards he was due in a criminal contempt proceeding. **See Gunther**, **supra**; **Diamond**, **supra**; **see also In the Interest of E.O.**, 2018 PA Super 247, at *7 (Pa. Super. 2018) (vacating a contempt order where the trial court

---

[13] In **Diamond**, **supra**, this Court explained that the essential procedural safeguards that are attendant to a criminal contempt proceeding include: the right to bail; the right to be notified of the specific accusations against the contemnor; a reasonable time to prepare a defense; the assistance of counsel; the right, upon demand, to a jury trial; and that guilt must be proven beyond a reasonable doubt. **Diamond**, 715 A.2d at 1196 n.10. Here, Father was not afforded any of these safeguards.

held father in criminal contempt for violating a visitation order in an underlying dependency proceeding, and ordered him to serve seven days in jail, but failed to provide father with any of the required procedural safeguards attached to indirect criminal contempt matters, and only a fine was authorized by the applicable statute, 42 Pa.C.S.A. § 4133).

However, upon consideration of the record and the contempt hearing transcript, we affirm the trial court's finding that Father was in contempt of the Return Order generally, which was amply within its discretion. *See Gunther*, 853 A.2d at 1016, 1020 (where the trial court held the contemnor in contempt of a prior court order, improperly imposed a criminal sanction without the necessary due process, and incorrectly classified the sanction as being civil in nature, this Court vacated the portion of the contempt order imposing sanctions, but "affirm[ed] the trial court's finding of contempt"); *see also Sinaiko*, *supra* (emphasizing that this Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt). We thus vacate the portion of the Contempt Order imposing sanctions, *see Gunther*, 853 A.2d at 1020, and remand the matter to the

trial court to afford it the opportunity to impose a proper sanction[14] in accordance with this Memorandum. ***See id.***

Contempt Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2018

---

[14] For instance, the trial court could exercise its discretion to again order Father to pay Mother's attorneys' fees, pursuant to 23 Pa.C.S.A. § 5323(g)(1)(v). ***See also Sutch v. Roxborough Mem'l Hosp.***, 142 A.3d 38, 68-69 (Pa. Super. 2016) (stating that "[a] court may require the contemnor to compensate the opposing party for losses incurred as a result of the violation or reimburse the party's attorneys' fees and costs. Nevertheless, an award of counsel fees is intended to reimburse an innocent litigant for the expenses the conduct of an opponent makes necessary, such as the cost of the contempt hearing, so it can be … compensatory[,] but it cannot be punitive." (citations, quotation marks, and paragraph break omitted)).