558 A.2d 86

Patricia J. GRIFFIN

v.

Vincent A. GRIFFIN, Sr., Appellant (Two Cases).

Patricia J. GRIFFIN, Appellant

v.

Vincent A. GRIFFIN, Sr.

Superior Court of Pennsylvania.

Argued May 24, 1988.

Filed April 25, 1989.

212

John P. Lawler, Stroudsburg, for appellant (at Nos. 3239 and 3556) and for appellee (at No. 3528).

Anne C. Tiracchia, Stroudsburg, for appellant (at No. 3528) and for appellee (at Nos. 3239 and 3556).

Before BROSKY, ROWLEY and McEWEN, JJ.

ROWLEY, Judge:

In these appeals, Patricia J. Griffin (hereinafter "Wife") and Vincent A. Griffin, Sr. (hereinafter "Husband"), chal-

lenge orders entered on October 22, 1987, and November 17, 1987, by the trial court to compel Husband to meet the child support obligations imposed upon him by the court's earlier order of August 3, 1987. The August 3 order directed Husband to pay $600.00 per week toward the support of the parties' three minor children and to pay two-thirds of the college expenses of the three older children. Husband previously took an appeal from the order of August 3, 1987, and it has been decided by an en banc panel of this Court. The portion of the August 3 order directing Husband to pay two-thirds of the college expenses of his oldest daughter, Cecilia, for the academic year 1987–88 was vacated and the case was remanded to the trial court for the taking of further evidence concerning Cecilia's entitlement to support. The remainder of the order was affirmed. *Griffin v. Griffin*, 384 Pa.Super. 188, 558 A.2d 75 (1989) (en banc).

In his present appeal at No. 3239 Philadelphia 1987, Husband contends that the trial court erred when, in an order entered on October 22, 1987, it found Husband in contempt for failing to pay child support as directed in the August 3, 1987 order. The court sentenced Husband to ninety days in jail but gave him the option of purging himself of contempt by complying in full with the child support order and paying arrearages and costs.

The appeals at Nos. 3528 and 3556 Philadelphia 1987 are taken from the trial court's order of November 17, 1987, directing that payment of the August 3 order be made from various funds available to Husband in order to satisfy Husband's obligation under the August 3, 1987 order. Wife appeals, at No. 3528, from paragraph 4 of the November 17 order, which directs the United Penn Bank of Stroudsburg to pay the sum of $600.50 per week to the Monroe County Domestic Relations Office, the payments to be made from an account in the name of Griffin and Griffin, Inc., a construction firm owned by Husband and Wife. It is further directed that the payments be applied to Husband's child support obligation. Husband cross-appeals, at No.

3556, from that portion of paragraph 1 of the November 17 order which directs Shearson Lehman Brothers, Inc. to liquidate Husband's remaining asset in their possession, "to wit, a partnership interest," which Husband identifies as a retirement account, so that the funds will be available to provide for the college tuition of the children for the 1988–89 school year; and from paragraph 3, which directs attorney John P. Lawler to pay to the Domestic Relations Office, to be credited to Husband's account, $20,000 presently in Mr. Lawler's possession and belonging to Husband, that sum allegedly having been lent to Husband by his mother.

Each of these appeals will be addressed separately. For the reasons set forth below, we affirm the contempt order appealed by Husband at No. 3239 and the portions of the November 17, 1987, order appealed by Husband at No. 3556, and we vacate the portion of the November 17, 1987, order appealed by Wife at No. 3528.

### Appeal at No. 3239 Philadelphia 1987

In his appeal from the trial court's October 22, 1987, order, Husband's sole argument is that the trial court erred in finding him in contempt when he was ready and willing to meet his support obligation out of the funds available in the Griffin and Griffin account at United Penn Bank, but was unable to do so because Wife refused to consent to the release of the funds. The signatures of both parties are required in order to withdraw funds from the corporate account. Husband points out that the trial court, in paragraph 4 of its subsequent November 17, 1987, order, eventually ordered payments to be made toward his child support obligation from the very funds upon which he sought to draw in order to avoid a finding of contempt. Husband served a portion of the jail sentence before paying the support arrearages on November 19, 1987.

Before considering the merits of Husband's argument, we must address two preliminary matters. The first concerns the finality of the contempt order. An appeal will lie only from a final order unless the right to appeal is expressly granted by statute or rule of court. *Danko*

*Development Corporation v. Econocast Corporation*, 369 Pa.Super. 120, 124, 534 A.2d 1108, 1110 (1987). Neither the silence nor the agreement of the parties confers jurisdiction where it otherwise does not exist, and therefore we may consider the appealability of an order *sua sponte. Szwecki v. Travelers Insurance Company*, 324 Pa.Super. 32, 34, 471 A.2d 109, 110 (1984). Generally, an order is not final unless it puts the litigant out of court. *Danko Development Corporation v. Econocast Corporation, supra.* Until sanctions or imprisonment are imposed, an order declaring a party to be in contempt is held to be interlocutory and therefore not appealable. *Rulli v. Dunn*, 337 Pa.Super. 613, 616, 487 A.2d 430, 431 (1985). In the present case, Husband has been imprisoned, and the order in question is therefore final and appealable. Thus, we have jurisdiction to consider Husband's appeal.

The second matter we must consider is whether Husband's appeal is now moot, inasmuch as Husband has been released from prison after having satisfied the support arrearages.[1] We will not decide moot or abstract questions, or enter a judgment or decree to which effect cannot be given. *Graziano Construction Co., Inc. v. Lee*, 298 Pa.Super. 311, 317, 444 A.2d 1190, 1193 (1982). Husband remains subject to a continuing support order, however. A second failure to comply with the order would again subject him to contempt proceedings, at which he might raise the same general issue raised herein, namely, whether a party who is willing to satisfy a support obligation from one specific source, but not from alternative sources, can be held in contempt for failure to meet the obligation. Accordingly, we do not regard the present appeal as moot. *See Barrett v. Barrett*, 470 Pa. 253, 259 n. 1, 368 A.2d 616, 619 n. 1 (1977) (although appellant's terms of imprisonment have expired, his appeals are not regarded as moot, since he remains subject to support orders and failure to comply

1. In fact, Husband has failed to include in his brief a statement of the relief that he is requesting us to grant. We remind appellant of Pa.R.A.P. 2111, which directs appellant to include in the brief, *inter alia*, "[a] short conclusion stating the precise relief sought."

with them might again subject him to contempt proceedings).

■ We now turn to the merits of Husband's appeal, mindful that in doing so we must place great reliance on the sound discretion of the trial judge, *Commonwealth ex rel. Ermel v. Ermel*, 322 Pa.Super. 400, 403, 469 A.2d 682, 683 (1983), and may not disturb the finding of contempt absent an abuse of discretion, *Kozlowski v. Kozlowski*, 362 Pa.Super. 516, 519, 524 A.2d 995, 997 (1987). Having reviewed the record and the arguments of the parties, we perceive no abuse of discretion by the trial court. Appellant cites case law to support the proposition that if an alleged contemnor has tried in good faith but is unable to comply with an order, he or she may not be punished for non-compliance. However, Husband merely asserts that he was unable to gain access to the corporate funds, not that he was unable, owing to a lack of financial resources other than the corporate bank account, to meet his support obligation. In fact, at the hearing on the contempt petition, the trial court asked Husband's counsel, "Is it your client's position he doesn't have funds, other than the funds [the corporate account] you want to access?" and counsel replied, "No, your Honor. That's not our position" (N.T., 10/22/87, at 10). This is a case of civil rather than criminal contempt, and in cases of civil contempt the general rule is that present inability to comply with a court order is an affirmative defense to be proved by the contemnor. *Barrett v. Barrett*, 470 Pa. at 263, 368 A.2d at 621; *Commonwealth ex rel. Ermel v. Ermel*, 322 Pa.Super. at 403, 469 A.2d at 683. Husband has not raised, much less proven, such a defense.

Husband contends that Wife may not, by refusing to consent to the release of corporate funds, determine the source from which Husband shall meet his support obligations. It is Husband, however, who has insisted that the support payments that he has been ordered to pay shall come from one specific source and no other. Assuming, for the sake of argument, that the trial court erred in refusing

to allow Husband to draw upon corporate funds, the fact remains that Husband did not assert his inability to make the required payments from other sources. If Husband is able to meet his support obligations, from whatever sources, he must do so. Because Husband refused to meet those obligations, we affirm the order of the trial court finding Husband in contempt.

Appeal at No. 3528 Philadelphia 1987

In this appeal, Wife asserts that since Husband has sufficient assets and income of his own from which to pay support, the trial court erred in ordering that his support obligation be paid, at a rate of $600.50 per week, from the corporate account. That account, Wife avers, is a marital asset subject to equitable distribution. She contends that there will be no way to make up for the depletion of this asset, and asks that we reverse the trial court's order and direct that the sums already withdrawn from the corporate account be considered arrearages owed by Husband. $600.00, as noted earlier, is the amount that Husband was ordered to pay weekly toward the support of the three minor children; $0.50 is a service charge. The amount of funds in the corporate account is approximately $160,000.00.

As was the case with Husband's appeal at No. 3239, we must ask at the outset whether we have jurisdiction to consider Wife's appeal. The gravamen of Wife's appeal is that her right to an equitable distribution of the funds in the corporate account will be jeopardized if Husband is allowed to deplete that account through court-ordered child support payments. Her request that we reverse the relevant portion of the trial court's order is thus analogous, in some respects, to an appeal from an order denying special relief under the Divorce Code, 23 Pa.S.A. § 403. This Court has held that an order granting special relief under the Divorce Code is not a final and appealable order, and has strongly suggested that the same result will obtain for an order denying special relief.[2] *O'Brien v. O'Brien*, 359

2. In *O'Brien v. O'Brien*, 359 Pa.Super. 594, 595, 519 A.2d 511, 512 (1987), this Court stated that "an order granting *or denying* special

Pa.Super. 594, 595, 519 A.2d 511, 514 (1987); *Shazes v. Baltuskonis*, 359 Pa.Super. 599, 601, 519 A.2d 514, 515 (1987). The decisions of this Court in *O'Brien* and *Shazes* were based upon the considerations put forth by our Supreme Court in *Fried v. Fried*, 509 Pa. 89, 501 A.2d 211 (1985):

> Our decision today reflects the policy of law which abhors 'piecemeal determinations and the consequent protraction of litigation.'... The avoidance of unduly protracted divorce proceedings is consistent with the legislature's intent to mitigate harm to the spouses and their children during this emotionally taxing experience.... [A] policy which allows piecemeal appeals from a single case serves only to increase the cost of litigation, and favors the party with the greater resources, who can strategically delay the action at the expense of the indigent party.

*Id.*, 509 Pa. at 97, 501 A.2d at 215 (citations omitted).

However, Wife's appeal also differs in crucial respects from the appeals at issue in *O'Brien* and *Shazes*. First, the order appealed from does not simply deny special relief, thereby raising the possibility that a marital asset will be consumed or disposed of. Instead, it *affirmatively directs* that the funds in the corporate account, alleged by Wife to be a marital asset, shall be applied to Husband's child support obligations. Second, the order appealed from concerns the implementation of the prior child support order of August 3, not the parties' divorce proceedings. Thus, the possibility of "unduly protracted *divorce* proceedings" that was of concern in *Fried, O'Brien,* and *Shazes* is not present here. Finally, although Wife focuses in her appeal upon the protection of a marital asset, the order in question aims to ensure the support of the parties' children. In

relief is not appealable as of right" (emphasis added). As the order under appeal *granted* special relief, the assertion concerning a denial of special relief is dictum.

We note also that Pa.R.A.P. 311, as amended December 30, 1987, effective January 16, 1988, disallows interlocutory appeals as of right from orders concerning attachments and injunctions pursuant to Sections 401(c) and 403(a) of the Divorce Code, 23 P.S. §§ 401(c) and 403(a).

*Ritter v. Ritter,* 359 Pa.Super. 12, 518 A.2d 319 (1986), we explained that an order awarding child support is immediately appealable because

> the child has no claim on the division of marital property. In addition, while the adults can generally look to other sources of revenue to maintain themselves during litigation, the child is totally dependent on its parents for support; its needs are immediate and continuing, and in particular, any deficiency is unlikely to be recovered. We believe the child support Order requires review to protect the interest of the child, to avoid hardship, and to assure uninterrupted maintenance by its parents.

*Id.,* 359 Pa.Superior Ct. at 17, 518 A.2d at 322. These considerations are also relevant to an order directing that particular funds be applied toward a previously determined child support obligation. If we are to ensure the uninterrupted maintenance of the children, we must be able to review immediately not only the initial order awarding child support, but also orders seeking to enforce compliance with the parent's support obligation through what amounts to an attachment proceeding. Otherwise, it is possible that parental assets which should have been preserved will be depleted, leaving the children vulnerable to inadequate support in the future.[3] In ascertaining whether an order is final and immediately appealable, we must consider not only the order's technical effect, but its practical ramifications as well. *Bell v. Beneficial Consumer Discount Company,* 465 Pa. 225, 228, 348 A.2d 734, 735 (1975); *Danko Development Corporation v. Econocast Corporation,* 369 Pa.Super. at 125, 534 A.2d at 1111. Having done so here, we conclude that paragraph 4 of the November 17, 1987, order, appealed by Wife at No. 3528, is final and immediately appealable.

---

**3.** This consideration is more than mere speculation in the present case, given Husband's testimony that he gave $75,000 in cash to his girlfriend (N.T., 11/12/87, at 107, 109) and threw approximately $200,000 into the ocean in the belief that "it's more important for children to realize the value of life and not live fat on the hog with money" (N.T., 11/12/87, at 120; quote at 145).

We turn now to the merits of Wife's appeal, acknowledging that in support proceedings the role of this Court is limited to determining whether a clear abuse of discretion, as shown by clear and convincing evidence, has occurred. *Koller v. Koller*, 333 Pa.Super. 54, 56–57, 481 A.2d 1218, 1220 (1984). Husband concedes that he and Wife started the firm of Griffin and Griffin, Inc. (N.T., 11/12/87, at 147), that Wife owns fifty percent of the company (N.T., 11/12/87, at 198–99), and that the funds in the United Penn Bank account belong to the company (N.T., 11/12/87, at 141). He contends, however, that the parties entered into an agreement as to how the funds in the corporate account should be divided between them, with Husband receiving 75 percent of the funds and Wife 25 percent (N.T., 11/12/87, at 141), and that in fact they have already paid taxes on their respective portions of the account. Therefore, he argues, the trial court did not abuse its discretion in directing that the funds in the corporate account "be treated as though [they] had been disbursed ..." (Brief for Appellee at 13).[4]

Wife's response is that any agreement that may have been entered into was ignored by the parties in their day-to-day operations and was subsequently abrogated by their later agreement that the funds in the corporate account would not be disbursed without the signatures of both parties. She asserts, further, that the agreement to which Husband refers merely determined the distribution of the parties' management fees, which had been placed in the corporate account, and "did not provide that the management fee received by either party would be excluded from marital property" (Brief for Appellant at 27). In fact, Husband does not expressly assert that the corporate account is not marital property. When asked by Wife's counsel, at the hearing on Wife's contempt petition, wheth-

4. Husband also points out that Wife has been residing in the marital residence rent-free and that she retains investments sufficient to provide her with an annual income of more than $10,000. These facts are irrelevant to the issue before us. Wife's occupation of the marital residence is a factor to be addressed in the equitable distribution of the marital estate, and Wife's income has no bearing upon the sources from which Husband's child support payments shall be made.

er it was correct "that the ultimate distribution of that money [in the corporate account] in terms of the divorce action has not been decided yet," Husband replied, "Well, the money has been decided because there is a signed agreement as to management fee as to who is to get what percentage of money, and I paid the taxes on my share. She has paid the taxes on her share" (N.T., 10/22/87, at 20). Husband's argument may be taken to mean that the parties have already determined how this item of marital property will be divided.

We are without the benefit of the trial court's reasoning on the issue before us, as the trial court has not prepared an opinion addressing the issues raised in these appeals. Instead, a note appended to the certified record refers us to the trial court's findings of fact made in connection with the child support order of August 3, 1987, and to the orders of October 22, 1987, and November 17, 1987, in lieu of a formal opinion. Having looked to these sources for guidance, we find no indication that the trial court found as a matter of fact that the corporate bank account is non-marital property belonging in part to Husband and in part to Wife. If the court had so found, it would logically follow that the court would have limited paragraph 4 of the November 17, 1987, order to the 75 percent of the account that Husband claims as his own. Instead, paragraph 4 is not limited in terms of time, total amount of payments, or percentage of the account, thus making the total amount of funds in the account available for child support. Given the absence of any persuasive evidence to the contrary, we can only conclude that the trial court considered the corporate account to be marital property upon which Husband could draw to meet his child support obligation.

■ We are constrained to hold that the trial court abused its discretion in allowing a marital asset to be utilized and entirely consumed for the purpose of making child support payments required of Husband when Husband has other funds available from which to make the payments. As marital property, the corporate account will be subject to equitable distribution along with the remainder of

the marital estate. In its recent decision in *Sutliff v. Sutliff*, 518 Pa. 378, 381, 543 A.2d 534, 536 (1988), our Supreme Court held that in valuing the marital estate for the purpose of equitable distribution, "a valuation date reasonably proximate to the date of distribution must, in the usual case, be utilized." If the parties' corporate account is drawn upon for child support payments, its value will obviously be much lower at the date of distribution than would otherwise be the case. Although the Supreme Court allowed that "there may be situations where marital assets have been consumed or disposed of *by one of the parties*, thus rendering a current valuation impossible and making it necessary to rely on data that would otherwise be considered stale," *id.*, 518 Pa. at 382–83, 543 A.2d at 536 (emphasis added), we do not view this statement as an invitation to the trial courts to *order* the dissipation of a marital asset. This is especially so where, as here, Husband does not assert that he has no funds other than the marital asset from which to pay child support. We conclude that the trial court, having implicitly found the corporate bank account to be marital property, abused its discretion in ordering child support payments to be made from that account. Accordingly, paragraph 4 of the order of November 17, 1987, must be vacated.[5] Husband's obligation to restore to the corporate bank account the funds already disbursed as support payments is to be addressed by the trial court during the equitable distribution proceedings.

## Appeal at No. 3556 Philadelphia

In this cross-appeal, Husband contends that the trial court erred in 1) ordering the liquidation of his pension fund

5. *Laxton v. Laxton*, 345 Pa.Super. 450, 498 A.2d 909 (1985), does not require a different result. In that case the trial court, after finding Husband in arrears on his obligation to pay alimony *pendente lite*, ordered Husband to remove $2,000.00 from his bank account, which was a marital asset, and forward it to Wife's attorney to be credited against current arrears and future payments. Husband appealed, and a panel of this Court affirmed the trial court's order. Since Wife did not challenge the trial court's order, the case does not govern our disposition of the present appeal.

in order to provide funds to pay for the college tuition of his children for the 1988–89 school year and 2) ordering Husband's attorney to turn over to the Domestic Relations Office, to be credited to Husband's account, the sum of $20,000.00 allegedly lent to Husband by his mother.[6] The reasons on which we based our finding of finality in connection with Wife's appeal at No. 3528 are applicable here as well, and therefore we proceed to the merits of Husband's appeal.

■ Our discussion of the merits will be brief, however, for the outcome of Husband's cross-appeal from the order of November 17, 1987, is controlled by our resolution of Wife's appeal from the same order. In support of his argument that the trial court erred in applying the assets in question to his child support obligation, Husband offers only one reason: that there are more than sufficient funds in the Griffin and Griffin account at United Penn Bank to meet Husband's obligation.[7] We have already determined, however, that the trial court erred in ordering that child support payments be made from the corporate account. As we are given no other basis on which to reverse the trial court, the portions of the trial court's order that are at issue in this cross-appeal must be affirmed.

The trial court's order of October 22, 1987, is affirmed. Paragraph four of the trial court's order of November 17, 1987, is vacated. The remaining portions of the order of November 17, 1987, from which appeals have been taken are affirmed. The case is remanded to the trial court. Jurisdiction is relinquished.

6. Husband also objects to those portions of the trial court's order which direct him to pay $1,476.00 in fees to Wife's counsel and which direct another attorney to pay to the Domestic Relations Office $12,-500.00 in mortgage money owed to the parties. These objections are not included in Husband's Statement of the Questions Involved, and therefore, pursuant to Pa.R.A.P. 2116(a), we may not consider them.

7. Husband does not argue that either of the sources of funds addressed in his cross-appeal is a marital asset that should not be utilized for child support.