J-A03021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SOMMER MILLER (F/K/A SOMMER NELSON) | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JAMES NELSON | |
| Appellee | No. 1085 EDA 2015 |

Appeal from the Order March 18, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2011-00392
PACES 09 1112286

| | |
|---|---|
| SOMMER MILLER (F/K/A SOMMER NELSON) | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES NELSON | |
| Appellant | No. 1330 EDA 2015 |

Appeal from the Order Entered March 18, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2011-00392

BEFORE: GANTMAN, P.J., MUNDY, J., and DUBOW, J.

MEMORANDUM BY MUNDY, J.:                        **FILED April 21, 2016**

Appellant/Cross-Appellee, Sommer Miller (Mother), appeals from the March 18, 2015 child-support order entered as a result of Mother's petition to modify a previous child-support order entered in this case.

Appellee/Cross-Appellant, James Nelson (Father), has filed a cross-appeal of the same order. After careful review, with respect to Mother's appeal we affirm in part and vacate in part. With respect to Father's cross-appeal, we affirm.

As reflected in the certified record, we summarize the pertinent history of this case as follows. Mother and Father are the parents of three minor children aged 11, 13, and 17 at the time of the subject order. On June 1, 2011, a child-support order was entered by the trial court, obligating Father to pay $2,500.00 per month base support plus arrears and 70% of unreimbursed medical expenses.[1] Various petitions for modification and petitions for contempt were subsequently filed, including Mother's petition for contempt filed on November 21, 2014, and her petition to modify filed on July 3, 2014. The master issued an order on December 22, 2014, increasing the base support award for the years 2012 through 2014, in consideration of bonuses received by Father that had not been previously included in his income calculations. The parties sought *de novo* review by the trial court,

---

[1] The base support included child support, tuition and alimony *pendente lite* (APL). The order was made effective August 1, 2011. The parties have since divorced and APL is no longer an issue.

which held a final hearing on March 13, 2015.[2]  On March 18, 2015, the trial court issued a final support order containing, *inter alia*, the following terms.

**Amount of Support**:

1.    Effective **January 1, 2012 through to December 31, 2012**, and based upon [Mother's] net monthly income of $2,123 and [Father's] net monthly income of $10,421, a monthly Order of Support shall be payable by the [Father] to the [Mother] as follows:

**Child Support         $2,116.50**

2.    Effective **January 1, 2013 through to December 31, 2013**, and based upon [Mother's] net monthly income of $2,425 and [Father's] net monthly income of $14,362, a monthly Order of Support shall be payable by the [Father] to the [Mother] as follows:

**Child Support         $2,721.57**

3.    Effective **January 1, 2014 through to December 31, 2014**, and based upon [Mother's] net monthly income of $2,955 and [Father's] net monthly income of $25,689, a monthly Order of Support shall be payable by the [Father] to the [Mother] as follows:

**Child Support         $3,704.86**

4.    Effective **January 1, 2015**, and based upon [Mother's] net monthly income of $2,955 and [Father's] net monthly income of $25,689, a monthly Order of Support shall be payable by the [Father] to the [Mother] as follows:

---

[2] No testimony was presented at the hearing.  Rather the parties offered certain stipulations and made arguments about various issues concerning credits, deviations, and the structure of the final order.

     a.    Child Support (based on [Father's] Base Salary)         $1,982.16

     b.    Child Support (based on [Father's] Bonus; 50% of Difference between the obligation with bonus and the obligation due to base salary only)         $711.65

     **Sub-Total Per Month $2,693.81**

     d.    Ordered on Arrears (OOA), applicable         $269.00

     **Total Per Month**         **$2,962.81**

…

**Additional Terms**:

1.    **Tuition- 2012 through 2014/2015 school year**.    The parties have stipulated that [Father] owes [Mother] the sum of $16,331, representing [Father's] share of the children's tuition (The City School and Church Farm School) from 2012 through the end of the 2014/2015 school year. **This sum shall be added to the arrears owed to [Mother].**    [Mother] is responsible to ensure that both schools are paid up to and including the 2014/2015 school year.

2.    **Tuition 2015/2016 school year forward**.    For the 2015 /2016 school year forward, each party shall be responsible to pay **directly to the school(s)** his or her respective share of the total tuition obligation for the parties' children (based upon his /her respective net incomes), with [Father] responsible for **88%** and [Mother] responsible for **12 %**. …

3.    **Bonus**.    It is acknowledged that, in approximately March of each year, the [Father] often receives a bonus from his employer.    For [Father's]

child support obligation beginning 1/1/15, [Father's] child support obligation should be $3,405.46 per month, based upon both his base salary and the bonus he received in 2015. However, as indicated above, [Father's] monthly obligation is structured to be in line with how [Father] is actually paid. As such, [Father] is currently only paying **$2,693,81** of the total **$3,405.46** due each month. The remaining obligation, namely $8,539.80 ($711.65 x 12 months) shall be paid by [Father] to [Mother] upon receipt of [Father's] annual bonus in the March of 2016. This amount of **$8,539.80** shall be paid to [Mother] by [Father] in a lump sum, without prejudice to [Father's] ability to pay all or part of said amount in advance of March of 2016. **This payment of $8,539.80 shall be made directly to [Mother] and not through PA SCDU**. …

4. **Arrears**. Due to the retroactive nature of the within Order, as well as the anticipated arrears owed to [Mother] as a result, within **Thirty (30) days**, [Father] shall make a lump sum payment towards the arrears in the amount of **$15,235.52**. This payment SHALL be made through PACSES.

…

Trial Court Order, 3/18/15, at 1-5 (emphases in original).[3]

On April 15, 2015, Mother filed a timely notice of appeal. Father filed a notice of cross-appeal on May 4, 2015.[4] The parties and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

---

[3] As we discuss *infra*, the trial court also allocated unreimbursed medical expenses at 70% for Father and 30% for Mother despite their respective income ratios being 88% and 12%. Trial Court Order, 3/18/15, at 2.

[4] As an initial matter, we consider whether Father's cross-appeal is timely and properly before us. **See Krankowski v. O'Neil**, 928 A.2d 284, 285 (Pa. Super. 2007) (noting, "[b]ecause the timeliness of an appeal implicates

*(Footnote Continued Next Page)*

On appeal, Mother raises the following issues for our review.

1. Whether the trial court erred and abused its discretion by entering an order allowing [Father] to pay school tuition directly to the minor children's school instead of the tuition being factored into [Father's] monthly child support obligation?

2. Whether the trial court erred and abused its discretion by entering an order that did not include [Father's] employment bonus income into [Father's] monthly child support obligation?

3. Whether the trial court erred and abused its discretion by entering an order making [Mother] responsible for thirty (30) percent of unreimbursed medical expenses for the minor children?

4. Whether the trial court erred and made a mistake of fact by entering an order finding that the parties stipulated at the March 13, 2015 court hearing that the outstanding tuition owed by [Father] to [Mother] for school years 2012 through the end of 2014/2015 is $16,331?

_(Footnote Continued)_ ———————————

our jurisdiction, we cannot address the merits of an appeal … before determining whether it was timely"). Instantly, Mother filed her notice of appeal on April 15, 2015. In Mother's proof of service, filed contemporaneously with her notice of appeal, her counsel certified that service upon Father's counsel was made "this day" by first class mail. **See** Proof of Service, 4/15/15, at 1. A cross-appeal must be filed within 14 days from the date the initial notice of appeal is served. Pa.R.A.P. 903(b). However, pursuant to Pennsylvania Rule of Appellate Procedure 121(e), when service is made by U.S. mail, three days are added to the period prescribed. **Id.** at 121(e) (clarifying in the note to the Rule that "subdivision (e) does apply to calculating the deadline for filing cross-appeals"). The 17th day following the service of the initial notice of appeal was May 2, 2015, which fell on a Saturday, rendering the due date Monday May 4, 2015. **See** 1 Pa.C.S.A. § 1908 (providing, "[w]henever the last day of any such period shall fall on Saturday or Sunday…, such day shall be omitted from the computation"). Accordingly, Father's notice of cross-appeal, filed on May 4, 2015, is timely.

5.     Whether the trial court erred and abused its discretion when it did not rule on [Mother's] petition for contempt of the September 30, 2014 child support order, which was pending before the Court at the March 13, 2015 hearing?

6.     Whether the trial court erred and made a mistake of fact by entering an order finding that the total child support arrears owed by [Father] to [Mother] are only $15,235.52?

7.     Whether the trial court erred and abused its discretion by not awarding counsel fees to [Mother] in connection with her petition to modify child support and petition for contempt of the September 30, 2014 child support order, where [Father] failed to report his significant and dramatic increases in income in 2012, 2013 and 2014, and where [Father] failed to comply with the [trial c]ourt's September 30, 2014 child support order?

8.     Whether the trial court erred and abused its discretion when it entered an Order that did not award [Mother] statutory interest on [Father's] outstanding child support obligation of $70,547.16.?

9.     Whether the trial court erred and abused its discretion when it entered an order that did not direct the [Father] to establish a trust fund for the minor child pursuant to **Branch v. Jackson**, [629 A.2d 170 (Pa. Super. 1993)]?

Mother's Brief at 5-6.

Father raises a single issue on cross-appeal.

Did the [t]rial [c]ourt err or abuse its discretion by failing to apply a downward deviation from the support guidelines where one of the minor children lives at boarding school, and the child's room, board, meals and other incidentals, are paid via tuition (to which Father already contributes), and where Mother's direct expenditures for such child are

reduced and/or eliminated, to include food, shelter, transportation and other reasonable needs?

Father's Brief at 3.

We first acknowledge our pertinent standard of review. "Appellate review of support matters is governed by an abuse of discretion standard. When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground." **R.K.J. v. S.P.K.**, 77 A.3d 33, 37 (Pa. Super. 2013) (internal quotation marks and citations omitted), *appeal denied*, 84 A.3d 1064 (Pa. 2014). "[A]n abuse of discretion requires proof of more than a mere error of judgment, but rather evidence that the law was misapplied or overridden, or that the judgment was manifestly unreasonable or based on bias, ill will, prejudice or partiality." **Portugal v. Portugal**, 798 A.2d 246, 249 (Pa. Super. 2002) (citations omitted). "The principal goal in child support matters is to serve the best interests of the children through the provision of reasonable expenses." **Mencer v. Ruch**, 928 A.2d 294, 297 (Pa. Super. 2007).

Mother first claims the trial court abused its discretion by permitting Father to pay his share of the children's school tuition fees directly to the subject schools rather than including the amount in his base support obligation. Mother's Brief at 12. Mother references two facts to support her contention that the trial court abused its discretion. First, the June 1, 2011 support order had included such fees into the base support award. Second,

- 8 -

she filed a contempt action against Father for failure to make tuition payments as required by a subsequent order.[5] *Id.* at 12-13. We disagree.

The Rules of Civil Procedure contemplate allocation of private tuition expenses in appropriate cases.

**Rule 1910.16-6. Support Guidelines. Adjustments to the Basic Support Obligation. Allocation of Additional Expenses**

Additional expenses permitted pursuant to this Rule 1910.16-6 may be allocated between the parties even if the parties' incomes do not justify an order of basic support.

…

**(d) Private School Tuition. Summer Camp. Other Needs.** The support schedule does not take into consideration expenditures for private school tuition or other needs of a child which are not specifically addressed by the guidelines. If the court determines that one or more such needs are reasonable, the expense thereof shall be allocated between the parties in proportion to their net incomes. The obligor's share **may** be added to his or her basic support obligation.

Pa.R.C.P. 1910.16-6(d) (emphasis added); *see also generally Gibbons v. Kugle*, 908 A.2d 916, 920 (Pa. Super. 2006). Mother does not challenge

_____

[5] An October 9, 2014 stipulated temporary order from the master provided for Father to "review private tuition costs … and reimburse [Mother] 70% for direct payments made and effective 10/1/14 , pay 70% of all costs directly to provider (or relist [before] master [])." Master's Order, 10/9/14, at 5. Mother's November 21, 2014 contempt petition alleged Father failed to reimburse her after she proffered tuition receipts. The master's December 22, 2014 modification order again "included tuition" in the base support award and credited Father $9,999.50 for direct payments. Master's Order, 12/22/14, at 2.

the trial court's allocation of the tuition expenses. Rather, she challenges the manner of payment. As noted by the trial court, however, Rule 1910.16-6(d) does not obligate a trial court to include those allocated costs in a base child support award. There is nothing in the Rule precluding the trial court from requiring an obligor to make direct payments to a provider, or to make reimbursement payments to an obligee. Mother points to no authority to the contrary.

Mother's stated reasons in support of her position are unpersuasive. While former trial court orders made the tuition allocation part of Father's base support obligation, the parties also stipulated for direct payments for a time. *See* Trial Court Order, 6/1/11, at 1; Master's Order, 10/9/14, at 1. Although Mother filed a contempt petition for Father's alleged failure to reimburse her for his share of tuition payments she made, the same was deferred for consideration with Mother's modification petition. *See* Trial Court Order, 1/29/15, at 1. The trial court never made a finding of contempt.[6] Furthermore, Mother did not raise these concerns when the trial court noted its decision, based on prior conferences with the parties, to permit Father to pay his portion of the tuition fees directly to the schools. *See generally* N.T. 3/13/15, at 11.

---

[6] We note Father filed an Emergency Petition for Special Relief on November 18, 2011, averring Mother had failed to make tuition payments as required by the June 1, 2011 support order. The resolution of this petition does not appear in the certified record.

> [I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue. On appeal the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected. In this jurisdiction … one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter.

*Summers v. Summers*, 35 A.3d 786, 790 (Pa. Super. 2012), *quoting* *Hong v. Pelagatti*, 765 A.2d 1117, 1123 (Pa. Super. 2000) (citations omitted).

Accordingly, we conclude Mother's first issue is waived. Furthermore, even if the issue was not waived, we would conclude Mothers claim of error is meritless. We discern no abuse of discretion by the trial court for permitting Father to pay his pro-rata share of the children's tuition directly to the providers.

Mother next claims the trial court abused its discretion by only requiring Father to pay a portion of the total monthly child support award on a monthly basis with the resultant accumulated arrearages payable in an annual lump sum. Mother's Brief at 14. Mother cites to Pennsylvania Rule of Civil procedure 1910.16-2,[7] which provides in pertinent part, "no

_____

[7] In her brief, Mother purports to quote Rule 1910.16-2(d)(2), but in fact only quotes Rule 1910.16-2(a). Mother's Brief at 13-14.

adjustments in support payments will be made for normal fluctuations in earnings." Pa.R.C.P. 1910.16-2(d)(2).

Significantly, the trial court did not exclude Father's bonus income from the calculation of his income for purposes of the child support guidelines, concluding Father's monthly support obligation would be $3,405.46 with bonus income included. Trial Court Opinion, 6/15/15, at 5. However, the trial court noted that Father's bonus is a significant proportion of his annual income, but is only received in one lump sum payment in March following the year it accrues.[8] *Id.* Given the size of the bonus relative to Father's base salary, the trial court did not consider the difference a "normal" fluctuation in earnings, and determined "it would be inequitable to require him to pay an order reflecting income he does not have at the time." *Id.*; *see also generally* Pa.R.C.P. 1910.16-2(d)(2). The trial court therefore required Father to pay support based on his full income, but structured the payments between monthly installments and a lump sum upon receipt to accommodate, in some degree, the manner in which the income is actually received. Again, therefore, it is not the amount of support but the manner of payment that Mother alleges as error.

---

[8] For example, the trial court, based on stipulated figures from the parties, determined Father's base salary for 2015 was $9,913.00 per month, but, with the anticipated bonus included, was $22,382.00 per month. Trial Court Order, 3/18/15, at 3.

The trial court discussed its concern about the timing and relative size of Father's bonus and suggested the formula it ultimately employed, *i.e.*, to include half of the anticipated amount of the support obligation attributable to the bonus income to the monthly payments and half as a lump sum. N.T., 3/13/15, at 4-5. Mother's attorney responded, "[a]nd Your Honor, my client would accept that." *Id.* at 5. Accordingly, Mother has again waived the issue for the purposes of appeal. *See Summers*, *supra*. Even if not waived, we discern no abuse of discretion in the trial court's structuring of Father's support obligation to mitigate the irregular manner beyond a "normal fluctuation" in which his income is received.

Mother's third issue alleges error by the trial court in directing Father to pay a share of unreimbursed medical expenses after the initial $250 that was not based on the parties' actual income ratio. *See* Pa.R.C.P. 1910.16-6(c) (providing "[u]nreimbursed medical expenses of … the children shall be allocated between the parties in proportion to their respective incomes"). The trial court acknowledges that it made a clerical error by including the wrong percentages and that the correct percentage shares should be 12% for Mother and 88% for Father.[9] Trial Court Opinion, 6/15/15 at 6. Accordingly, we vacate that portion of the trial court's March 18, 2015 child-support order allocating 30% to Mother and 70% to Father for unreimbursed

---

[9] Father concedes these are the correct percentages. Father's Brief at 16-17.

medical expenses over $250.00 annually and remand for inclusion of the correct percentages in accordance with this memorandum.

Mother's next issue focuses on the trial court's finding of the amount of reimbursement due from Father to Mother for private tuition fees for the years 2012, 2013 and 2014. Mother's Brief at 16. Although the June 1, 2011 child support/APL order in effect for those years took into account the children's school tuition expenses, it did so without consideration of Father's bonus income, and based those expenses on Father's presumed 70% share. Because inclusion of Father's bonuses would have resulted in a higher percentage obligation, the parties agreed Mother was due reimbursement for the difference between her 30% share that the June 1, 2011 order contemplated and her corrected lower percentage share after calculating in Father's bonus income for each year.

At the March 13, 2015 hearing, the trial court asked the parties for the figures they proposed for that reimbursement, and whether there was agreement on the figures. N.T., 3/13/15, at 11, 22-25. Excerpted portions of the ensuing discussion follow.

> THE COURT: All right. So we have worked out the numbers.
>
> [MOTHER'S COUNSEL]: Yes, we have.
>
> THE COURT: The basic numbers, all right. And what we're going to do today is listen to – what I'm going to do is listen to your position with respect to the collateral issues of tuition, correct?

- 14 -

[MOTHER'S COUNSEL]:     That's correct.

…

THE COURT:     And if there's disagreement on the bottom line, then I'll get into that, but I want to hear.  What's your bottom line?

[MOTHER'S COUNSEL]:     Our bottom line…

THE COURT:     What does he owe your client and what does he owe by way of tuition that's outstanding at this moment?

[MOTHER'S COUNSEL]:     Your Honor, okay, as far as outstanding tuition that's owed to the school, it is $2,268.

…

THE COURT:     Now what about reimbursement to the Plaintiff?

[MOTHER'S COUNSEL]: As far as reimbursement to my client, the bottom line number, Your Honor, that we came up with, as far as the 70% to reimburse her, would be $14,063.

…

[MOTHER'S COUNSEL]:  The [$]14,063, that is for the school year from retroactive 2012 to 2014.

[FATHER'S COUNSEL]: For both schools or one school?

[MOTHER'S COUNSEL]: For both schools.

…

[FATHER'S COUNSEL]: Your Honor, we would stipulate to $14,063 being [Father's] share of the tuition for the years 2012, 2013, and 2014.

THE COURT: So the $14,063 is stipulated to, right?

N.T., 3/18/15, at 15-20.

Later, Mother asserted the $14,063.00 figure she mentioned did not include tuition payments for all of 2012. *Id.* at 22. In further discussions, Mother's counsel noted Mother had the pertinent receipts and could calculate the full amount, and the trial court again asked for Mother's bottom-line figures. *Id.* at 22-24. The hearing moved on to other issues and Mother never proffered any corrected figures to the parties' earlier stipulation. Accordingly, the trial court was not in possession of any alternative figures upon which to base Father's tuition reimbursement obligation for the years 2012 through 2014.

Based on our review of the whole record, we conclude the trial court did not abuse its discretion in setting the amount of Father's obligation to reimburse Mother for paid and unpaid tuition by accepting the stipulated figures of the parties in the absence of any other figures Mother purported she could substantiate, but failed to do. We conclude the record supports the trial court's determination and we decline to disturb its findings.[10] **See Portugal**, **supra**.

---

[10] Mother included purported post-hearing submissions in her initial reproduced record that she claimed showed a greater amount was in fact
*(Footnote Continued Next Page)*

Mother's next allegation of error faults the trial court because it "did not rule on [Mother's] Petition for Contempt of the child support order." Mother's Brief at 17. Adjudication of Mother's November 21, 2014 contempt petition had been deferred to the same hearing on Mother's July 3, 2014 petition for modification of child support. The trial court's order, following the March 18, 2015 hearing, addressed Mother's modification petition, but was silent on Mother's contempt petition. Accordingly, there is no final order from which to appeal the contempt matter.[11] *See Griffin v. Griffin*, 558 A.2d 86, 88 (Pa. Super 1989) (describing the finality requirements for an appeal from contempt of support proceedings). Accordingly, Mother's challenge is not a proper subject of this appeal, which lies from the March 18, 2015 final support modification order.

*(Footnote Continued)* ———————

due. However, the submissions were not part of the certified record. Upon motion of Father, this Court ordered Mother's reproduced record stricken, and the offending documents were removed from Mother's resubmitted reproduced record. *See* Application to Dismiss, 8/28/15, at 2-5; *Per Curiam* Order, 10/7/15, at 1.

[11] In its Rule 1925(a) opinion, the trial court explained why it believed the issues, raised in Mother's contempt petition, were covered in the new support order or were otherwise moot. Trial Court Opinion, 6/15/15, at 7-8. The fact remains, however that no order granting, denying or dismissing Mother's contempt petition has been entered, and the matter is technically still pending.

We also note that Mother did not request to put on any testimony or offer any evidence in support of her contempt petition at the March 13, 2015 hearing. *See generally*, N.T. 3/13/15.

In Mother's sixth issue, she claims the trial court erred by determining that the "total outstanding child support owed for years 2012, 2013 and 2014 is $15,235.52." Mother's Brief at 17. Mother claims there is no mention of or support for this figure in the record. *Id.* We conclude Mother misconstrues the trial court's order. The trial court's March 18, 2015 order dealt with arrears in four ways. First, in setting Father's prospective monthly support obligation, the trial court included payment of $269.00 toward arrears "as applicable." Trial Court Order, 3/18/15, at 2 ¶ 4.d. Second, as discussed above, the order provided for a lump sum payment of arrears accrued, based on the partial monthly allocation of Father's support payment derived from his bonus income, upon receipt of the bonus. *Id.* at 5 ¶ 3. Third, the stipulated sum of $16,331.00, being Father's share of tuition fees for the years 2012-2014, was ordered to be added to the arrears owed Mother. *Id.* at 4 ¶ 1. Finally, the Order provides, "[d]ue to the retroactive nature of the within Order, as well as the anticipated arrears owed to [Mother], as a result, within Thirty (30) days, [Father] shall make a lump sum payment **towards** arrears in the amount of $15,235.52." *Id.* at 5 ¶ 4 (original emphasis omitted, emphasis added).

Thus, contrary to Mother's assertion, the trial court did not "determin[e] that the actual amount of child support due and owing to [Mother] is only $15,235.52." Mother's Brief at 18. Rather the trial court determined that $15,235.52 was the amount to be payable as an **initial**

lump sum.[12]   Accordingly, we conclude Mother's claim is based on a misreading of the order and is therefore meritless.

In her seventh issue, Mother alleges the trial court abused its discretion by not awarding Mother any attorney fees in connection with her petition to modify child support.[13]  Mother's Brief at 19.  Attorney fees are statutorily authorized in support proceedings, at the discretion of the trial court.

**§ 4351. Costs and fees**

**(a) General rule.--** If an obligee prevails in a proceeding … to obtain a support order, the court may assess against the obligor filing fees, reasonable attorney fees and necessary travel and other reasonable costs and expenses incurred by the obligee and the obligee's witnesses. Attorney fees may be taxed as costs and shall be ordered to be paid directly to the attorney….

23 Pa.C.S.A. § 4351(a).

When deciding whether to award counsel fees under this provision, the trial court must consider the

---

[12] The actual arrearage amount is determinable by the Domestic Relations Office (DRO) based on the order, the status of any previous arrears at the time of the order, and the subsequent history of payments through the Pennsylvania Automated Child Support Enforcement System.  Such arrears will be subject to paragraph 4.b. on page 2 of the child-support-modification order.  Any dispute about the DRO's calculations or its interpretation of the March 18, 2015 order can be addressed in enforcement proceedings initiated below.

[13] Mother also argues attorney fees should have been awarded in connection with her contempt petition.  Mother's Brief at 19.  However, as we discussed above, Mother's contempt petition remains pending.  Accordingly, we confine our discussion to Mother's modification petition.

> totality of the circumstances, and enjoys broad discretion to fashion an appropriate award. While awards should not be based solely upon financial needs, the relative financial positions and needs of the parties form a relevant consideration, and we have affirmed awards based upon disparate incomes. Factors to be considered in awarding fees include whether the conduct of the obligor impeded entry of a support order, whether the obligor presented a reasonable defense, whether the obligor failed to support the child, and whether the parties have disparate financial positions and needs. The overriding concern is the best interest of the child.

***Suzanne D. v. Stephen W.***, 65 A.3d 965, 975 (Pa. Super. 2013) (citations omitted).

Instantly, Mother did not request attorney fees in her petition to modify child support. ***See*** Petition to Modify Support Order, 7/3/14, at 1-2. At the March 13, 2015 hearing, Mother did not broach the subject of attorney fees with the trial court. Mother did not proffer any testimony or evidence in support of an award. Based on the information available, the trial court, in its discretion, concluded that attorney fees were not warranted. Trial Court Opinion, 6/15/15, at 9. We discern no abuse of discretion by the trial court. We therefore conclude that Mother's allegation of error relative to an award of attorney fees must fail. ***See Suzanne D.***, ***supra***.

Mother next claims the trial court abused its discretion by refusing her request to award her interest on outstanding support arrearage.[14] Mother's Brief at 20. Mother cites Section 4351(a), quoted above, claiming an assessment for "other reasonable costs" includes statutory interest. The trial court stated in response that "[i]t is well established that Pennsylvania is an 'income share' state and does not allow for interest on arrears." Trial Court Opinion, 6/15/15, at 9. We agree that, in the context of determining the parties' relative child support obligations in an initial or modification proceeding, Section 4351(a) does not authorize an award of interest on arrears.[15] Mother supplies no authority for her expansive reading of "other reasonable costs," which we deem is addressed to an obligee's "necessary" out of pocket expenditures attendant to his or her action to obtain support. *See generally* 23 Pa.C.S.A. § 4351(a). Accordingly, we conclude Mother's eighth issue is devoid of merit.

Lastly, Mother contends the trial court erred by failing to require Father to establish a trust fund for the children's future post-secondary education expenses. Mother's Brief at 21. Mother cites *Branch v. Jackson*,

---

[14] The principal amount of arrearage Mother claims as a basis for an award of interest, to wit, $70,547.16, includes the additional claimed tuition reimbursement rejected by the trial court, which we affirmed above.

[15] Whether interest may be charged on arrears reduced to judgment in an enforcement action is not before us. *See generally Goddard v. Heintzelman*, 875 A.2d 1119 (Pa. Super. 2005). Mother's argument appears to conflate these distinct types of proceedings.

629 A.2d 170 (Pa. Super. 1993) in support of her argument. "Based upon the Superior Court's ruling in **Branch**, [Mother] argues that [Father] should be obligated to make payments to a trust account established on behalf of the parties' Minor Children for the purpose of providing a fund for [their] college expenses." The trial court determined **Branch** is not controlling. Trial Court Opinion, 6/15/15, at 9-10. We agree.

In **Branch**, the father had an income of $75,000.00 per month and the mother had an income of $400.00 per month. The parties cross-appealed an order of support that required the father to pay support for one child, born out of wedlock, in the amount of $2,000.00 per month plus $3,000.00 per month, payable into a trust fund for future expenses. The father's challenge in **Branch** was that the amount of support was excessive, bearing no relation to the child's needs, and that it was error to require payment into a trust for future expenses. **Branch**, **supra** at 171. On appeal this Court noted the parties' combined incomes exceeded the guidelines and was thus to be analyzed as a high-income case under **Melzer v. Witsberger**, 480 A.2d 991 (Pa. 1984). **Id.** The **Branch** Court held that "[b]ecause the record does not reveal a calculation of the child's reasonable needs [as required by **Melzer**], we are unable to determine whether the order is excessive, inadequate or just right." **Id.** The **Branch** Court vacated the order and remanded for further proceedings. **Id.** In the process it stated that "**we will not at this time address the remaining**

**issues**." *Id.* (emphasis added). Therefore, contrary to Mother's assertion, *Branch* does not stand for the proposition that a trial court has discretion to order an obligor to pay into a trust to fund a child's college education as part of a support obligation.

As noted by the trial court, *Melzer* has been superseded by statute, so that the guidelines now control in high-income cases. Trial Court Opinion, 6/15/15, at 10; Pa.R.C.P. 1910.16-3.1. Furthermore, this Court has specifically held that, for purposes of child support, parents are not obligated to provide for college expenses. *MacKay v. MacKay*, 984 A.2d 529, 533 (Pa. Super. 2009), *appeal denied*, 995 A.2d 354 (Pa. 2010). Accordingly, we conclude the trial court did not err or abuse its discretion by declining to order Father to pay additional support into a trust to fund the children's future college expenses.

Having considered all of Mother's claims, we turn next to Father's sole issue in his cross-appeal, namely that the trial court abused its discretion by failing to apply a downward departure to his guideline support obligation to reflect the fact that the oldest child was in boarding school. Father's Brief at 31-32. Father argues that because "the guidelines presume that Mother is making expenditures for things such as food and housing, the very items which are supplied via the private school tuition (toward which Father already pays), this very situation requires a downward deviation from the support guidelines." *Id.* at 33.

Deviation from the level of support dictated by the guidelines is authorized by Rule.

**Rule 1910.16–5. Support Guidelines. Deviation**

**(a) Deviation.** If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

*…*

**(b) Factors.** In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider:

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) assets of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children;

(8) in a spousal support or alimony *pendente lite* case, the period of time during which the parties lived together from the date of marriage to the date of final separation; and

(9) other relevant and appropriate factors, including the best interests of the child or children.

…

Pa.R.C.P.1910.16–5(a)–(b).

> As [the R]ules and the prevailing case law make clear, a court generally has reasonable discretion to deviate from the guidelines if the record supports the deviation. … In a support guidelines case, once the court has properly consulted the guidelines, it has the discretion to deviate from the guidelines figure, as long as the court provides adequate reasons for the deviation.

*Silver v. Pinskey*, 981 A.2d 284, 296 (Pa. Super. 2009) (citations omitted).

> The presumption is strong that the appropriate amount of support in each case is the amount as determined from the support guidelines. However, where the facts demonstrate the inappropriateness of such an award, the trier of fact may deviate therefrom. This flexibility is not, however, intended to provide the trier of fact with unfettered discretion to, in each case, deviate from the recommended amount of support. Deviation will be permitted only where special needs and/or circumstances are present such as to render an award in the amount of the guideline figure unjust or inappropriate.

*Elias v. Spencer*, 673 A.2d 982, 984 (Pa. Super. 1996) (citation omitted).

The trial court explained its decision as follows.

> [T]he evidence presented[16] suggested to [the trial c]ourt that Mother provided the child … with significant additional spending money while he is away at school …. Additionally, [Mother] has to maintain a place for [the child] to live when he

---

[16] Again, we note that no testimony was taken at the March 13, 2015 hearing. Rather the facts referred to by the trial court consist of unsworn statements or argument made by the parties or their attorneys during the discussion of this issue with the trial court. N.T., 3/13/15, at 27-42.

> returns home from school on most weekends. …
> Father failed to show that these factors resulted in a
> "unique financial" situation so as to warrant a
> downward deviation from the guidelines.

Trial Court Opinion, 7/16/15, at 5-6.

We conclude the trial court's findings are supported by the record. There was no evidence of the actual impact on Mother's expenses in meeting the needs of the oldest child of his attendance at boarding school. Other than generalized assertions by Father that some savings are probable, there was nothing presented from which the trial court could conclude that a deviation was necessary to avoid an "unjust or inappropriate" support obligation based on the guidelines. *See Elias*, *supra*.

Based on all the foregoing, we affirm the trial court's March 18, 2015 child-support modification order in all respects, save one. As acknowledged by both parties and the trial court, we are constrained to vacate that portion of the child-support modification order assigning the parties' respective percentage obligations to pay unreimbursed medical expenses, and to remand for correction of the order to reflect those obligations in accordance with their respective percentage of the parties' combined income, *i.e.*, Father 88% and Mother 12%.

Order affirmed in part. Vacated in part. Remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/21/2016</u>