J-S06019-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| KEN WITKOWSKI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROXANNE YANIELLO | : | No. 1668 EDA 2021 |

Appeal from the Decree Entered July 13, 2021
In the Court of Common Pleas of Wayne County Civil Division at No(s):
360-2019-D.R.

BEFORE:  KUNSELMAN, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED APRIL 26, 2022**

Ken Witkowski ("Husband") appeals from the divorce decree and order incorporating the divorce master's report and recommendation. Husband argues that the trial court improperly found him in contempt for failing to provide discovery responses and precluded him from presenting evidence before a divorce master. He also challenges the sufficiency of the evidence. We affirm.

This case stems from a divorce action initially filed by Husband against Roxanne Yaniello ("Wife") in July 2019. The trial court adopted the divorce master's finding of facts, set forth as follows:

1. The parties stipulated that the ground for divorce was irretrievable breakdown under Section 3301(d) of the Divorce Code.

2: The parties were married on June 18, 2016.

3. The parties separated on June 9, 2019.

4. [Husband] filed a Complaint in Divorce on July 17, 2019.

5. [Wife] filed an Answer and Counterclaim on September 11, 2019.

6. [Wife] testified in this matter.

7. [Wife] is a special education teacher at Newstory, a private school.

8. [Husband] is disabled.

9. The parties during the course of their marriage resided at 709 Silkmon Road, Lake Ariel, PA. This property was originally titled in the name of the [Wife] and the [Husband's] Mother, whose interest in the property was then transferred to [Husband], leaving title during the marriage in the name of [Husband] and [Wife].

10. [Wife's] Exhibit 1 (D1) is the tax assessment from Wayne County, listing a total value of the marital property of $227,000.00.

11. [Wife's] Exhibit 2 (D2) is the Statement of Delinquent Taxes, which has delinquent taxes for 2015, 2016, 2017, 2018, and 2019. [Wife] claims that half the value of 2016, the entire value of 2017 and 2018, and half the value of 2019 should be determined to be marital debt. This amounts totals to $18,634.47.

12. Neither party has a retirement account.

13. The 1988 Sylvan Boat was obtained during the marriage, was in good condition at the time of separation, and was worth approximately $2,000.00 at the time of separation. Husband has retained possession of this property.

14. The 2010 Kawasaki Motorcycle was obtained during the marriage, was in very good condition at the time of separation, and was worth approximately $3,000.00 at the time of separation. Husband has retained possession of this property.

15. The 2005 Kawasaki Motorcycle was obtained during the marriage, was in very good condition at the time of separation, and was worth approximately $2,500.00 at the time of separation. Husband has retained possession of this property.

16. The 2004 Yamaha Motorcycle was obtained during the marriage, was in very good condition, and was worth approximately $2,200.00 at the time of separation. Husband has retained possession of this property.

17. The 2001 Jeep Wrangler was obtained during the marriage, is in running, but no[t] good condition, and was worth approximately $1,000.00 at the time of separation. Wife has retained possession of this property.

18. The 2001 Chevrolet Camaro was obtained during the marriage. It was unknown if this vehicle was operable at the time of separation, and was worth approximately $1,000.00 at the time of separation. Husband has retained possession of this property.

19. The 2000 Chevrolet Camaro was obtained during the marriage, was in fair condition on the date of separation, and was worth approximately $2,000.00 on the date of separation. Husband has retained possession of this property.

20. The 2000 Ford Pickup was obtained during the marriage, was in good, operable condition on the date of separation, and was worth approximately $1,000.00. Husband has retained possession of this property.

21. Wife determined the value of these properties by looking up similar vehicles on the internet, and researching the price of scrap metal.

22. After the date of separation, Wife sold the following personal property for the following amounts:

a. 1989 Ford S10: $400.00;

b. Pig Roaster: $250.00; and

c. York rake: $200.00.

[Wife] testified that she used this money for an electric bill ([Wife's] Exhibit D4), however, the electric bill that was paid was paid prior to the parties separation, while the property was sold after the parties separation. [Wife] testified that she has not sold any puppies, and did not transfer or sell any tools or other property.

23. Wife determined the values of these properties by asking friends.

24. The parties are the owners of three rottweiler dogs, Maddie, Simon and Lacey. Wife is in possession of Maddie, while Husband is in possession of Simon and Lacey.

25. Prior to the parties['] marriage [Husband] transferred two horses, Levi and Coco, to [Wife] and her son. After the parties separation [Wife] gave the horses away since no one was able to care for the horses.

26. The parties have already separated the remainder of their personal property.

27. During the course of the parties['] marriage, [Wife] took out a loan in her name in the amount of $5,268.57, to assist in the payment of [Husband's] child support obligation. [Wife] submitted [Wife's] Exhibit 5 (D5) which showed a loan balance of $5,183.68 at the time of separation.

28. [Wife] has been married one time prior, while [Husband] has been married three times prior to this marriage.

29. [Wife] is 48 years of age with a birth date of April 2, 1973.

30. [Wife] is in very good health with no physical or mental health conditions.

31. [Wife] submitted [Wife's] Exhibit 6 (D6) which is the [Wife's] 2020 W-2, which showed [Wife's] gross pay at $22,866.73.

32. [Husband] is currently disabled.

33. [Wife] also received unemployment compensation in 2020, in the amount of $6,076.00, as evidenced by [Wife's] Exhibit 7 (D7).

34. [Wife] does not receive any health benefits through her employer, but does receive a $20,000.00 life insurance policy, as well as, [sic] a 401(k) that she is contributing to.

35. [Wife] submitted [Wife's] Exhibit 8 (D8) which is [Wife's] Monthly Cost of living. The total from D8 is $2,333.94, however the utilities listed and the groceries listed are shared between [Wife] and her boyfriend.

36. [Wife] resides with her boyfriend Bruce and her son Jason, who is still in high school.

37. [Husband] has filed bankruptcy in the past and has a number of judgments against him that [Wife] was unaware of before their marriage.

28. [Wife] did all of the cooking, indoor household work, lawn maintenance, and some of the snow removal. [Husband] did some of the snow removal and some of the household maintenance.

29. [Husband] worked collecting rent for a rental property, would repair and sell cars, and would also sell puppies that he bred.

30. The parties['] standard of living was middle class, they lived paycheck to paycheck, and went out to dinner approximately one time per week.

Divorce Master's Report and Recommendation, 4/27/21, at 1-5.

After Husband's initial divorce complaint, Wife filed, *inter alia*, a motion to compel discovery in July 2020. Wife contended that on October 18, 2019, she had served interrogatories and a request for production of documents on Husband, and the deadline for responding had passed and Husband had never responded. The trial court issued an order, on July 13, 2020, requiring Husband to respond to Wife's interrogatories and request for production of documents within 20 days. However, by July 27, 2020, the trial court withdrew that order upon a joint stipulation by the parties that Husband would provide discovery responses, with objections, to Wife within 30 days.

Prior to the expiration of the 30 days, on August 13, 2020, Husband filed for bankruptcy and obtained an automatic stay of the divorce proceeding. The next day, the court entered an order effectuating the

automatic stay. Wife obtained relief from the automatic stay from the bankruptcy court, and the trial court lifted its stay and allowed the divorce case to proceed.

By late November 2020, Husband had not complied with the stipulated discovery order. Wife moved for contempt and sanctions pursuant to Pa.R.C.P. 4019, on November 30, 2020, and the trial court issued a rule to show cause. Husband countered with a motion to strike Wife's motion and vacate the court's rule to show cause. At a hearing in March 2021, Husband withdrew his motion to strike and requested more time to respond to Wife's discovery requests. He did not dispute having been properly served with Wife's discovery requests, or that he had never responded to them. The trial court declined Husband's request.

Approximately three weeks later, on April 21, 2021, the parties were scheduled for a hearing before a divorce master. Shortly before the start of the hearing, because Husband had still not complied with the stipulated order, the court issued an order finding Husband in contempt. As a sanction, it precluded him from offering any evidence in the divorce action. Husband sought reconsideration of the preclusion sanction, and following a hearing, the trial court denied reconsideration. The parties proceeded to a hearing before the divorce master at which only Wife was permitted to offer evidence.

One week later, on April 28, 2021, the divorce master filed her report and recommendation. Husband again sought reconsideration of the

preclusion order, which the trial court denied. He then filed exceptions to the master's report and recommendations. The trial court conducted a hearing on Husband's exceptions and denied them. On July 13, 2021, the trial court issued a divorce decree and order incorporating the report and recommendation of the divorce master. The instant timely appeal followed in which Husband challenges both the April 21, 2021 order[1] and the July 13, 2021 order. The trial court and Husband both complied with Pa.R.A.P. 1925.

Husband raises the following questions for our review:

1. Did the trial court abuse its discretion in finding Husband in what amounts to indirect criminal contempt without affording Husband the proper procedural safeguards and without finding that all of the requirements for indirect criminal contempt were met, including that Husband acted with wrongful intent?

2. Did the trial court abuse its discretion in sanctioning Husband for his failure to respond to Wife's discovery requests by preventing him from presenting any testimony or evidence at the master's hearing when the trial court did not consider any of the required five factors to determine whether such a severe sanction was appropriate, and the evidence presented is

_____

[1] During the trial court's hearing on Husband's reconsideration motion, Husband requested the right to file what he considered to be an interlocutory appeal from the April 21, 2021 order. *See* N.T. 4/21/21 at 9-10. The trial court, also believing the order to be interlocutory, denied the request. Given this particular procedural posture, we decline to find waiver and consider Husband's challenge to the April 21, 2021 order in the context of the trial court's July 13, 2021 final divorce decree and order. *See Rohm & Haas Co. v. Lin*, 992 A.2d 132, 149 (Pa.Super.2010) ("Once an appeal is filed from a final order, all prior interlocutory orders become reviewable").

insufficient to make a determination that these factors have been met?

3. Did the trial court abuse its discretion in failing to address Husband's claims for alimony and counsel fees and costs, and in making an equitable distribution award based on a completely one-sided hearing without sufficient evidence regarding all of the factors for the parties' economic claims.

Husband's Br. at 6.

In his first issue, Husband contends that the trial court erred by failing to acknowledge that its April 21, 2021 order imposed an indirect criminal sanction upon him. He argues that the sanction constituted indirect criminal contempt because it was not conditioned on the happening or non-happening of an event. Thus, he was not able to purge the contempt. As such, Husband argues that the court erred by failing to provide him with the proper procedural safeguards required to impose sanctions for indirect criminal contempt. He points out that he did not testify at the March 29, 2021 hearing. Further, he maintains that the evidence presented was insufficient to support the trial court's finding of contempt because it did not establish that his failure to comply with the discovery order was willful or reckless.

Pennsylvania Rule of Civil Procedure 4019(a)(1) governs discovery violations stating, in pertinent part: "The court may, on motion, make an appropriate order if . . . a party fails to serve answers [or] sufficient answers . . . to written interrogatories" or "otherwise fails to make discovery or to obey an order of court respecting discovery." Pa.R.C.P. 4019(a)(1)(i), (iv),

(viii). Significantly here, Rule 4019(c)(4) allows the court to impose punishment for contempt. Another subsection of the rule, Rule 4019(c)(2), specifically allows the court to preclude the offending party from offering evidence. It provides that the court may enter an order "refusing to allow the disobedient party to support . . . designated claims[,] or prohibiting such party from introducing in evidence designated documents, things or testimony[.]" Pa.R.C.P. 4019(c)(2).

The difference between civil contempt and criminal contempt is "a distinction between two permissible responses to contumacious behavior." *Garr v. Peters*, 773 A.2d 183, 190 (Pa.Super. 2001) (quoting *Diamond v. Diamond*, 715 A.2d 1190, 1194 (Pa.Super. 1998)). The responses are "classified according to the dominant purpose of the court." *Id.* "If the dominant purpose is to prospectively coerce the contemnor to comply with an order of the court, the adjudication is civil." *Id.* In contrast, if "the dominant purpose is to punish the contemnor for disobedience of the court's order or some other contemptuous act, the adjudication of contempt is criminal." *Id.* Contempt is civil in nature rather than criminal, under Pennsylvania law, if the contemnor can purge the contempt before imposition of punishment. *Id.* at 191; *Diamond*, 715 A.2d at 1194. "[T]hose accused of indirect criminal contempt are provided the safeguards which statute and criminal procedures afford." *Crozer-Chester Med. Ctr. v. Moran*, 560 A.2d 133, 137 (Pa. 1989)

To establish indirect criminal contempt, the movant must establish: "(1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; (2) the contemnor had notice of the order; (3) the act constituting the violation must have been volitional; and (4) the contemnor must have acted with wrongful intent." ***Commonwealth v. Walsh,*** 36 A.3d 613, 619 (Pa.Super. 2012).

Husband also challenges the sufficiency of the evidence to sustain the preclusion sanction. "Because evidentiary sufficiency is a question of law, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Ballard***, 80 A.3d 380, 390 (Pa. 2013) (citation omitted). We must determine whether, when viewed in a light most favorable to the party that prevailed below, the evidence and all reasonable inferences therefrom are sufficient to establish each element of indirect criminal contempt beyond a reasonable doubt. ***See Diamond***, 715 A.2d at 1196.

In this case, we conclude that the trial court was well within its purview when finding Husband in contempt. It is undisputed that at no time did he ever attempt to comply with the order – an order entered with Husband's stipulation. Nor did it err by imposing a sanction precluding Husband from offering any evidence. The discovery sanction of the preclusion of evidence is explicitly permitted by our Rules of Civil Procedure. ***See*** Pa.R.C.P. 4019(c)(2).

Moreover, although Husband is correct in his classification of the sanction as constituting indirect criminal contempt, he fails to specify how such classification renders the sanction erroneous. The sanction's provisions are indicative of indirect criminal contempt because they do not allow Husband to purge his contempt. The overall purpose of the sanction is to punish Husband and vindicate the authority of the court. *See Garr*, 773 A.2d at 190-91; Nevertheless, Husband only sets forth the general contention that the trial court failed to provide him with the proper safeguards required when considering indirect criminal contempt. To this end, he points out that he did not have the opportunity to testify at the March 29, 2021 hearing because of a purported Covid-19 concern. However, Husband fails to explain how his failure to appear constituted a failure on the part of the trial court to provide procedural safeguards to Husband. Further, Husband provides no pertinent legal authority regarding this claim. Thus, we find Husband's argument unavailing.

Further, Husband's claim that the court erred by failing to conclude that the evidence Wife provided was insufficient to establish the necessary elements of indirect criminal contempt is also not meritorious. He avers that the court erroneously found that his conduct in failing to respond to Wife's discovery request was willful and reckless. He emphasizes that he suffered from head injuries and other ailments that allegedly affected his cognition. However, in its opinion, the court aptly noted that the circumstances

surrounding Husband's noncompliance indicated that his conduct was willful and reckless:

> Here, [Husband's] failure to comply with [Wife's] request for answers to interrogatories was willful and reckless because the parties' agreed to a joint stipulation which stated that [Husband] would provide discovery. [Husband] then filed bankruptcy thereby staying this action. Once [Wife] petitioned the bankruptcy court and the bankruptcy court lifted the stay, [Husband] still did not comply with the joint stipulation agreed upon the parties. Nor did [Husband] seek to enlarge the time for compliance with the joint stipulation which was reduced to a court order by agreement.

Tr. Ct. Rule 1925(a) Op., 10/18/21, at 7.

We agree with the trial court. When the evidence is viewed in the light most favorable to the verdict winner, in this case Wife, there is ample evidence to support the court's conclusion that Husband's conduct was done with wrongful intent. **See Walsh,** 36 A.3d at 619; Husband did not respond in any fashion to Wife's discovery requests for over ten months despite both a joint stipulation to do so and the knowledge that Wife had filed a motion to compel seeking the sanction ultimately imposed. Husband's first issue warrants no relief.

In his second issue, Husband argues that the trial court erred by imposing the sanction because it was too severe and did "not fit the crime." He claims that the court did not properly consider the required factors when imposing the sanction. He contends that the court failed to take his alleged cognitive impairment into account. Further, he maintains that the sanction

- 12 -

was too severe because it resulted in Husband being unable to fairly dispute or establish the value of marital assets.

It is well settled "that in the exercise of judicial discretion in formulating an appropriate sanction order, the court is required to select a punishment which 'fits the crime.'" *Hein v. Hein,* 717 A.2d 1053, 1056 (Pa.Super. 1998) (citation omitted) (holding that discovery sanction precluding the offending party from presenting evidence in support of their divorce matter was appropriate). We review the appropriateness of the sanction  "in light of four factors: 1) the prejudice caused to the opposing party and whether the prejudice can be cured; 2) the defaulting party's willfulness or bad faith in failing to comply with the discovery order; 3) the number of discovery violations; and 4) the importance of the precluded evidence in light of the failure." *Id.*

Further*,* "the integrity of the adjudication process requires that all parties promptly and with thoroughness respond to discovery requests. While this principle is applicable to all litigation, it is especially meaningful in domestic relations matters." *Id.* This Court has emphasized "that imposition of severe [discovery] sanctions should generally be reserved for cases where a court has previously compelled discovery and a party has violated that order; an order compelling discovery "would serve as a warning that if there is future non-compliance, sanctions will be imposed." *First Lehigh Bank v. Haviland Grille, Inc.*, 704 A.2d 135, 139 (Pa.Super. 1997).

In this case, we hold that the court did not error by imposing the sanction. As noted by the trial court, Husband engaged in willful conduct when he failed to comply with the stipulated July 27, 2020 discovery order. Further, Wife filed a petition for contempt in November 2020 and a hearing was held on the matter in March 2021. Thus, Husband was well aware that his continual non-compliance would likely result in sanctions, yet he still did not comply. *See First Lehigh Bank*, 704 A.2d at 139. In fact, even after the contempt hearing, when Husband was on notice that the court was considering precluding him from presenting evidence before the divorce master, Husband still did not comply prior to the divorce master's hearing. Thus, Wife was certainly impeded from preparing for the hearing and thereby prejudiced. *See Hein,* 717 A.2d at 1056. Moreover, we note that unlike some of the cases cited by Husband which held that precluding evidence was too severe a sanction in the case of a partial discovery failure, here Husband failed to **timely** provide **any** of the requested materials. *See Roman v. Pearlstein*, 478 A.2d 845, 849 (Pa.Super. 1984) (discovery sanction precluding expert testimony regarding liability was too severe when the discovery violation solely related to damages). In this case, we conclude that the trial court's sanction did "fit the crime." Hence, Husband's second issue also merits no relief.

In his third issue, Husband contends that the trial court erred by adopting the divorce master's equitable distribution award, which was based on only Wife's evidence. He also claims that the court erroneously failed to

consider his claim for alimony and counsel fees. He maintains that the court thereby failed to effectuate economic justice between the parties.

"Our standard of review when assessing the propriety of an order effectuating the equitable distribution of marital property is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure." *Carney v. Carney*, 167 A.3d 127, 131 (Pa.Super. 2017) (quoting *Morgante v. Morgante*, 119 A.3d 382, 386 (Pa.Super. 2015)). We "will not find an 'abuse of discretion' unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record." *Id.* (citation omitted). When reviewing "the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole." *Id*. (citation omitted). In doing so, court must "measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Id*. (citation omitted). Further, the "master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." *Id.* (citation omitted)

Husband waived this issue. He did not include it in his exceptions to the master's report. Hence, it is waived. *See* Pa.R.C.P. 1920.55-2(b); *Cook*

*v. Cook*, 186 A.3d 1015, 1024-25 (Pa.Super. 2018) (finding issue waived when not included in exceptions to master's report).

In any event, it lacks merit. As discussed, the trial court permissibly precluded Husband's evidence. Thus, the master had only Wife's evidence regarding valuation, and Husband presented no evidence, including regarding any claim for alimony or counsel fees. Thus, the court did not abuse its discretion when adopting the master's valuation of marital assets and declining to award Husband alimony or counsel fees. *See Carney*, 167 A.3d at 131.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2022